10 So.2d 478

## BOX v. BOX.

**7 Div. 670.**

Supreme Court of Alabama.

Nov. 19, 1942.

Roberts & Cunningham, of Gadsden, for appellee.

Hood, Inzer, Martin & Suttle and Roger C. Suttle, all of Gadsden, for appellant.

LAWSON, *Justice*.

This appeal is prosecuted by the appellant, J. E. Box, from a decree against him in favor of the appellee, Mrs. Alma Box (Darnell), awarding specific performance of an alleged contract for the conveyance of certain real estate described in the bill.

The appellant and appellee were married for a number of years. The appellant secured a divorce in the courts of Ohio in 1937. Since the filing of this suit, in January, 1938, the appellee, complainant below, has remarried and is now known as Mrs. Alma Darnell.

The property involved consists of land located in Glencoe, Alabama, and a house and filling station which have been built thereon. The land was formerly owned by one Fry, a brother of the appellee, who in 1922 conveyed it by warranty deed to the appellant. A short time thereafter, the appellant built a house on the lot, into which

he moved his family, consisting of the appellee and their children, where they have lived ever since. The appellant was engaged in work away from home and did not spend much of his time with his family, but visited them from time to time up until a short while before he obtained the divorce in 1937. The filling station which is now located on the land was constructed by the appellant sometime between November, 1929, and June, 1931, while he was living with his family.

The case made by the bill is that appellee was induced to accept service in the divorce suit filed by appellant in the State of Ohio and to waive alimony on appellant's promise to deed her the property.

Appellant denies that he ever made any such agreement and here contends that the evidence falls far short of that degree of proof which must be produced to justify a decree of specific performance.

The appellee contends that the promise to convey the property was made by the appellant in a letter which she testified she saw at the office of her attorney. The letter was not produced and the evidence does not show that it was unavailable to the appellee. In fact, it shows that she made no effort to secure it. However, seasonable objection was not made to the admission of the testimony relating to the contents of the letter on the ground that the letter was the best evidence. Such objection was necessary under our decisions, irrespective of the fact that, at the time this case was decided below, Section 6565, Code of 1923, was in force and effect. While the evidence relating to the contents of the letter was not primary or the best, it was let in without seasonable objection and, being competent, must be considered by this court and does not fall within the rule of exclusion provided by Section 6565, supra. Cotton v. Cotton, 213 Ala. 336, 104 So. 650; Hill v. Hill, 216 Ala. 435, 113 So. 306; Louisiana State Life Ins. Co. v. Phillips, 223 Ala. 5, 135 So. 841; Thompson v. Heiter, 238 Ala. 549, 192 So. 282.

The evidence upon which the appellee relied to prove the existence of the contract is hereafter set out in question and answer form.

In the course of the examination of the appellee, the following questions were propounded and answers made thereto:

"Q. Your husband sued you for divorce? A. Yes.

"Q. What lawyer represented you in the matter? A. Roy McCord.

"Q. What is the first notice that you had that your husband was so suing you for divorce? A. Well, I had a letter from Ohio saying that — a lady wrote me a letter and sent me a piece in the paper —

"Q. While negotiating the papers with reference to obtaining a divorce did — what was to be done about the place that belonged to your husband at that time, at Glencoe? A. I was to get a divorce and the place — McCord promised me I would get a divorce and the place.

"Q. That was the place you lived in? A. Yes.

"Q. And the property in question here? A. Yes.

"Q. Did you see the letter from your husband authorizing — What was the substance of it with reference to the place? A. I was to get the place and a divorce; that was what the letter —

"Q. Then were you to get any alimony in the divorce proceedings? A. I don't think so.

"Q. Did you accept that offer to settle it that way? A. Yes. A divorce and the place.

"Q. By what sort of instrument were you to get the place? By deed? A. Yes, by deed.

"Q. Was the divorce put through without alimony? A. Yes, sir.

"Q. Without alimony to you or support to the children? A. Yes.

"Q. And did Mr. Box ever give you a deed to the place as far as you know? A. No, he didn't.

"Q. Where was that letter when you last saw it? A. In McCord's office.

"Q. Do you know where it is now? A. No, I don't know what he did with it.

"Cross-examination

"Q. I believe you testified that you had never gotten any deed from Mr. Box to the property out here. A. No, I didn't get a deed.

"Q. Mr. McCord never did tell you he had any deed to that property for you? A. He promised me a deed and that he would have him to sign it.

"Q. Say Mr. McCord promised you a deed? A. He did.

"Q. He never told you he had any deed. A. Yes, he did. I saw a letter from Mr. Box to him.

"Q. That letter I believe you testified stated that he would give you a deed. A. Yes.

"Q. Wasn't that letter from an attorney who represented Mr. Box up there? A. I don't think so.

"Q. You say it was from Mr. Box himself? A. I think that's right.

"Q. You don't have that letter now? A. No, I don't.

"Q. Have you asked Mr. McCord for it? A. No, I haven't."

The following questions were propounded to and answers made by J. W. Fry, a brother of the appellee, who testified in her behalf:

"Q. Did you go with your sister to Mr. Roy McCord's office when they were negotiating some papers for divorce? A. Yes, sir.

"Q. Did he have a letter there in his office from Mr. Box or Mr. Box's attorney with reference to the settlement of the place out there? A. He said he did.

"Q. Who was to get the place? A. He told me that Mr. Box wanted a divorce and my sister wanted the property and that he had the property for her.

"Cross-examination

"Q. I believe you said you were in Mr. McCord's office with Mrs. Box? A. Yes, sir.

"Q. Did you see any letter there from anyone stating that Mr. Box would give the property over there to Mrs. Box? A. No sir, I didn't see any letter.

"Q. Did Mr. McCord read any such letter as that in your presence? A. No, sir, he only told me that Box agreed to give her the property for the divorce.

"Q. Was Mrs. Box there at that time? A. Yes.

"Q. And heard the discussion? A. I suppose she did. It was in the same room."

In the examination of Lucille Box, the daughter of the appellee and appellant, the following transpired:

"Q. Were you present in Mr. McCord's office when your mother was going over the proposition about securing a divorce? A. Yes sir, I was.

"Q. Did you see and hear the letter read where it was stated that your mother was to get the place and your father was to get a divorce? A. Yes sir.

"Q. And did you hear your mother authorize Mr. McCord to accept that proposition? A. Yes, sir."

Herbert Box, the son of appellee and appellant, was asked the following questions and made the following answers:

"Q. Were you in Mr. McCord's office when your mother was negotiating her divorce proceedings? A. I was.

"Q. Do you know what arrangements they had about who was to get the place? A. She was to get the place and he was to get a divorce. He told her to sign for a divorce and she would get the place.

"Cross-examination

"Q. Was Mr. Box present at the time you were talking about this discussion with reference to the divorce in Mr. McCord's office? A. No sir.

"Q. What is the basis of your testimony that Mr. Box was to get a divorce and Mrs. Box was to get the house and property? A. Well, I heard lawyer McCord read a letter from his lawyer in Ohio stating that he would make that agreement.

"Q. Do you have that letter? A. No sir.

"Q. Do you know where it is? A. I do not."

W. F. Huff, who had testified for the appellant relative to the construction of the house and filling station, was recalled for further cross-examination by the appellee, and the following questions were propounded to and answers made by him:

"Q. Were you present in Mr. McCord's office when the then Mrs. Box was discussing the property settlement between her and her husband? A. Yes sir.

"Q. Now, at that time or along about the date, you contracted to buy the filling station from Mrs. Box? A. Yes sir.

"Q. Do you know how Mrs. Box was to get title to this property? A. If — I just know what McCord told me.

"Q. What did he tell you? A. He told me that — he told me that Mr. Box was going to deed her this property there if she would give him a divorce.

"Q. And say anything about alimony? A. Well, now. He didn't say a thing about alimony."

The testimony was not given ore tenus, but before the Register, therefore the findings of fact are not supported by the presumptions of verity that obtain where testimony is taken and given in open court before the judge rendering the final decree. The evidence must be here weighed and considered de novo. Williams v. Ellington, 233 Ala. 638, 172 So. 903; Howell v. City of Dothan, 234 Ala. 158, 174 So. 624.

Where, as in this case, the action is based upon an alleged instrument which is not produced, the same degree of proof is required as is necessary for the establishment of a parol contract within the statute of frauds, and the existence and terms of the contract must be shown by clear, definite and unequivocal evidence. 58 C. J., p. 1206; Adrian et al. v. Republic Finance Corporation et al., Mo.Sup., 286 S.W. 95; McKee v. Higbee et al., 180 Mo. 263, 79 S.W. 407; Van Horn v. Munnell et al., 145 Pa. 497, 22 A. 985.

The rule is well established in this jurisdiction that in order to enforce specific performance of a parol contract for the sale of lands, the terms of the contract must be definitely alleged, and proven as alleged by clear and satisfactory proof. If the evidence fails to prove the contract, or if any of its terms are left in doubt or uncertainty, specific performance should be refused. Jones v. Jones, 155 Ala. 644, 47 So. 80; Harrison v. Harrison, 198 Ala. 159, 73 So. 454; Barnes v. White, 195 Ala. 588, 71 So. 114; Grooms v. Brown-Marx Co., 239 Ala. 284, 195 So. 215.

The appellant strenuously denies that he made any such agreement. Appellee does not claim that any promise was made to her personally, but relies solely on an alleged promise which she says was in a letter written to her attorney by the appellant. The letter was not produced or any explanation given for not producing it. The attorney to whom the letter was alleged to have been written did not testify in the case, although a resident of the county of trial. Appellee and her brother, who testified in her behalf, were not in agreement as to what is alleged to have transpired in the office of the attorney. She claims that she saw the letter. He testified that he did not see the letter or hear it read, but that the attorney did make a statement that the appellee was to get a deed to the property. The testimony of appellee and Herbert Box, her son, is not in accord as to the writer of the letter. She stated that the letter was written by appellant. He stated that the letter which he heard read was from appellant's attorney.

We have carefully considered all the evidence in this case and are of the opinion that appellee, when her evidence is weighed as it should be weighed, has not met that burden of proof required by courts of equity in cases like the present. No vague or uncertain recollection concerning the stipulation of the alleged written instrument should be permitted to supply the place of the written instrument itself. Shorter v. Sheppard, 33 Ala. 648; Union Baptist Church et al. v. Roper, 181 Ala. 297, 61 So. 288; Butler Cotton Oil Co., v. Millican, 216 Ala. 472, 113 So. 529. It follows, therefore, that the decree of the lower court must be reversed.

Reversed and remanded.

GARDNER, C. J., and BOULDIN and FOSTER, JJ., concur.