29 So.2d 1

**BENEFIELD et al. v. FAULKNER.**

**4 Div. 424.**

Supreme Court of Alabama.

Jan. 23, 1947.

Douglas Brown, of Ozark, for appellant.

Chas. O. Stokes, of Ozark, for appellee.

GARDNER, Chief Justice.

The bill in this case was filed by the complainants (appellants here) for the sale of 80 acres of land for division among the tenants in common. William G. Faulkner was made a party defendant, and required to propound his claim to the real estate involved. Faulkner filed an answer and cross-bill seeking an adjudication by the court as to his rights to the land based upon a claim of adoption by M. A. Babston, who intended by such adoption, so Faulkner claims, to make him his heir at law. The other parties to the suit were collaterally related to M. A. Babston, the original owner, one a brother, and the others nephews and nieces, children of a deceased brother.

Upon consideration of the cause upon pleadings and proof for final decree the trial court concluded that the defendant William G. Faulkner had been so adopted by M. A. Babston as a son and heir to his estate, and was the owner of the property. From this decree the complainants have prosecuted the appeal.

It appears undisputedly that M. A. Babston was the owner of this 80 acres of land. He was a Methodist preacher and a farmer. Having no children of his own and desiring to adopt a son, he applied to the Methodist Orphanage, then located at Summerfield, Alabama, and was given the care, custody and control of defendant Faulkner, who was then only seven years of age. This was in the year 1902. Faulkner was sent by the Orphanage to Ozark, where Babston met him, carried him to his home where, according to the practically undisputed proof, he lived with Babston and his wife as a member of the family, calling each of them by their appropriate designation as a child would call its parents. It appears from this record that as a little family they lived happily together until the death of Babston in 1912. Before Babston's death he moved to Midland City, which was nearby, in order that the adopted son might have better educational advantages. After the death of Babston his widow for a while lived on this 80 acres of land, Faulkner going with her, and he remained with Mrs. Babston until a few years before her death when he, then a married man, went to Texas, returning for frequent visits. It is clear enough that throughout all this period of time Faulkner performed his duty to his adopted parents faithfully, as might be expected of any dutiful son, and what services were rendered, of course, were without compensation. Mrs. Babston died in 1931. Faulkner had been in possession of this 80 acres of land since that date, living on the property and paying the taxes; all of which possession was peaceable and undisturbed.

There is something said in the brief for complainants as to the statute of limitations and matters of that character, but, as to this 80 acres of land there had been no adverse possession, and authorities dealing with the question of statute of limitations are without influence here.

■ The whole case turns upon the question of adoption. When the boy was sent to Babston in 1902 by the Methodist Orphanage there was executed a contract between Babston and the Alabama Methodist Orphanage, which will appear in the report of the case. This contract bears date of August 28, 1902, was duly signed by M. A. Babston and witnessed by G. P. Dowling and H. H. Brown. G. P. Dowling at the time was Judge of Probate of Dale County, and H. H. Brown was one of the county commissioners. There was no acknowledgement, nor was it recorded as was required by the statute then in force. See Section 367, Code of 1896. This statute required the attestation of two witnesses, but, also, required an acknowledgement before the Judge of Probate, and the recordation of the adoption proceedings. Had this statute been followed in the respects indicated, and as therein required, by its very terms it would have the effect of making the child capable of inheriting this estate of M. A. Babston. But the statute was not enforced, and of consequence was ineffective as a legal adoption under Prince v. Prince, 188 Ala. 559, 66 So. 27, followed in a more recent case of Meeks v. Cornelius, 244 Ala. 532, 14 So.2d 145, where it was observed that the right of adoption is purely statutory, and in derogation of the common law, and that the statute concerning adoption for the purpose of inheritance must be followed in substantial respects. See also Johnson v. Long, 236 Ala. 126, 181 So. 120; Rivers v. Rivers, 240 Ala. 648, 200 So. 764.

■■ But the Prince case came before the court in an equity action in the nature of specific performance, with the conclusion that the contract for adoption was valid and enforceable. Prince v. Prince, 194 Ala. 455, 69 So. 906. The reasoning of the opinion was to the effect that where the actual parent, or one standing in loco parentis, has surrendered the custody of the child to the adoptive parent, upon the mutual agreement that such child shall be adopted by and made the legal heir of the latter, and this agreement is fully performed by the child, a court of equity will decree a specific performance of the adoption contract by such parent, his heirs or representatives, to the extent of investing in the child the whole or such part of the adoptive parents' estate as he would have been entitled to receive under the adoption contract if properly executed. And, as there observed: "An adoptive paper, though not proven or recorded, so as to constitute a legal adoption, may be competent evidence of a contractual relation between the quasi adoptive parent and child." This same authority is likewise to the effect there must appear the adoption was of such a nature as to indicate a purpose to make the child capable of inheriting the estate of the adoptive parent,—and not a mere agreement to adopt. This authority is well supported as disclosed by the annotated note to Jones v. Guy, 135 Tex. 398, 143 S.W.2d 906, 142 A.L.R. 77, where numerous cases are cited with comment; and, also, by those noted in 2 C.J.S., Adoption of Children, § 26, p. 394 et seq. And that such a contract may be with the adoptive parent by an orphanage institution was demonstrated in Re Biehn's Estate, 41 Ariz. 403, 18 P.2d 1112.

■ And in the matter of construction of the adoption contract the authorities are to the effect that equivocal and doubtful terms are to be interpreted in the light of circumstances surrounding the execution and the meaning the parties themselves have placed upon them. 2 C.J.S., Adoption of Children, § 27, p. 398.

Where, as here, real estate is the subject matter of the suit this court has given application to the statute of frauds and denied specific performance as to an oral contract concerning adoption in Marietta v. Faulkner, 220 Ala. 561, 126 So. 635, followed and applied in Olive v. Olive, 221 Ala. 697, 127 So. 915.

■ Following the principle, therefore, recognized by these authorities we find that the statute of frauds has been met by the writing signed by M. A. Babston, the adoptive parent. True, there is no express language that the child shall inherit his estate, though its provisions clearly indicate that he was to be treated as a son. Indeed, it says that "he will treat him and care for him in every particular as if he were his own child." We find

ourselves in agreement with the trial judge that the proper interpretation of this contract as shown by the surrounding facts and circumstances demonstrates that M. A. Babston intended the adoption proceedings to invest this child with the right of inheritance as if he were his own. Babston carried the agreement and had it witnessed by G. B. Dowling, then the Judge of Probate of Dale County. He had H. H. Brown, a county commissioner, to also witness the paper. He merely failed to acknowledge and have it recorded. But, as further evidence of his full intention to adopt we find that Babston in his own handwriting, and in his family Bible recorded the following: "William G. Faulkner, an adopted son of M. A. Babston, born March 25, 1895." Numerous witnesses testified that Mr. Babston stated on various occasions that he had adopted this boy, that he and his wife had no children of their own, and that he wanted him to have what was left at his death.

As we have previously indicated, the boy fully performed his duties as an adopted son, and the evidence fails to show any break in the relationship of an adopted child and parent. We are, therefore, fully persuaded that the evidence amply supports the conclusion that this paper which the adoptive parent M. A. Babston signed in the presence of G. P. Dowling, Judge of Probate, and the witness Brown, was intended as an adoption of the boy for all purposes, with the right to inherit as his own child.

The statute as found in Section 367, Code of 1896, is the one in force at the time of the execution of what we term the adopting contract, and the one, of course, applicable here. Numerous changes have been made in the adoption proceedings, as noted in Section 9302, Michie's Code 1928, and still further modifications are found in Title 27, § 1, Code of 1940. With these subsequent statutes we are not here concerned.

Our conclusion is that the decree of the trial court in favor of Faulkner as the adopted son of M. A. Babston, and vesting in him under his cross-bill the title to this 80 acres of land as the sole heir, is proper and should be here affirmed. It is so ordered.

Affirmed.

BROWN, LIVINGSTON and SIMPSON, JJ., concur.