69 So.2d 421

## LUKER v. HYDE et al.

### 8 Div. 665.

Supreme Court of Alabama.

Nov. 5, 1953.

Rehearing Denied Jan. 21, 1954.

John W. Brown and H. G. Bailey, Boaz, for appellant.

250

Scruggs & Scruggs, Guntersville, and R. G. Kelton, Oneonta, for appellees.

LAWSON, Justice.

James E. Snead and Emma I. Hyde were married at Snead, Blount County,. Alabama, on November 27, 1887.

On or about February 7, 1889, a girl was born to Bill Miller and wife, who lived in or near Snead. Bill Miller's wife died shortly after the birth of the little girl. When she was only a. few weeks old, the little girl was moved to the home of James E. and Emma Snead at Snead,. Alabama. She was known in the community as Lillie Snead.

When Lillie was about twelve years of age, the Sneads moved to Boaz, Marshall County. Lillie entered school at Boaz, where she was known by her teachers and fellow students as Lillie Snead. She referred to James E. Snead as Daddy and' to Emma Snead as Mamma. The Sneads. treated Lillie with the greatest kindness. and consideration and frequently spoke of her as their adopted daughter and treated her in every way as their child. Lillie helped about the home and was a great comfort to James E. and Emma Snead;. to whom no child was ever born.

In January, 1904, the Union. Central' Insurance Company issued two. policies. of life insurance, each in the amount of $1,500, one covering the life of James E. Snead and the other the life of Emma Snead. The policy insuring the life of James E. Snead contained the following language: "And the said Company Agrees. to Pay, at its Home Office, the said amount of: insurance as follows: $1000 to Emma I. Snead, his Wife and $500 to Lillie Snead, his Daughter." The policy of insurance issued on the life of Emma Snead provided: "And the said Company Agrees to Pay, at its Home Office, the said amount of insurance as follows $1000 to the executors, administrators or assigns of the Insured and $500 to Lillie Snead her Daughter."

Lillie was married to J. Mancil Luker in November, 1907. At the time of her marriage she was still living with James E. and Emma Snead. She was referred to in the marriage license as Lillie Snead.

For a short time after her marriage, Lillie and her husband lived in the Snead's home, but later moved to a home of their own in Boaz. In 1913 the Lukers moved to Luverne, Alabama, where they lived for about five years until they moved to Troy, Alabama. In 1926 the Lukers moved from Troy to Savannah, Georgia, where they have continued to make their home. During the years that she lived away from Boaz, Mrs. Luker kept in constant touch with Mr. and Mrs. Snead, visiting them frequently. The Sneads continued to look upon her as their adopted daughter and they frequently gave her substantial gifts.

Mrs. Emma Snead became ill in May, 1948, and was taken to a hospital in Gadsden. Mrs. Lillie Luker came to Boaz from her home in Savannah and looked after Mr. Snead and frequently visited Mrs. Snead at the hospital in Gadsden.

Mr. James E. Snead was taken to a Gadsden hospital in July, 1948, where he remained until his death on November 1, 1948. He had accumulated considerable property, including real estate situate in Etowah and Marshall Counties through which ran a track of the Nashville, Chattanooga & Saint Louis Railroad. Mr. Snead disposed of his property by will. He left all of his personal property to his wife, Emma Snead, and left to her all of his real estate "situated West of the N., C. & Saint Louis Railway Company absolutely and in fee simple." He left to "Mrs. Lillie Luker and James Mancil Luker, share and share alike," all of his real estate situated on the East side of the N., C. & Saint Louis Railway.

Mrs. Emma Snead never left the hospital after her admittance in May, 1948. She died intestate on January 1, 1949, just two months after her husband's death.

After Mrs. Snead's death a controversy arose between Mrs. Lillie Luker, the foster child, and the collateral next of kin of Mrs. Snead as to the right to inherit the property of which Mrs. Snead was seized and possessed at the time of her death, most of which had come to her through her late husband.

Some of the collateral next of kin of Mrs. Snead filed this suit in the circuit court of Marshall County, in equity, against other of her collateral next of kin seeking a sale of the land for division of the proceeds of the sale. The land sought to be sold was that which came to Mrs. Snead through the will of her husband. Mrs. Lillie Luker was made a party respondent, the bill alleging that she claimed some right, title or interest in the suit property.

Mrs. Luker filed a cross-bill by which she sought to establish her right as an adopted daughter to inherit from Mrs. Emma Snead. The cross-bill contained an alternative prayer for specific performance of a contract to adopt Mrs. Lillie Luker as the child of James E. and Emma Snead.

From a decree sustaining demurrer to her cross-bill, Mrs. Lillie Luker appealed to this court. We reversed. Luker v. Hyde, 253 Ala. 283, 45 So.2d 32, 34. Reversal was based on the ground that the demurrer did not assign any valid objection to the cross-bill in so far as it sought a decree declaring Mrs. Lillie Luker to be the adopted child and legal heir of Mrs. Emma Snead.

The opinion in Luker v. Hyde, supra, referred to the fact that this court has recognized the right to the specific performance "of a contract to adopt or of adoption" which has the elements of a contract and when it is not invalid by reason of the statute of frauds, but is not a full compliance with the adoption statute. It was observed that, "The proceedings in the instant case show that the question is with respect to the title to land and, therefore, the statute of frauds must be complied with in order to have a decree of specific performance."

In Luker v. Hyde, supra, it was held, in effect, that although the bill prayed for specific performance as an alternative prayer, the averments of the bill were not

sufficient to justify the relief of specific performance. The reason for this holding appears in the following language, which we quote from the opinion, 253 Ala. 287, 45 So.2d 34:

"The cross-bill does not make alternative allegations upon a contingency that if the written instrument of adoption does not comply with section 2367 of the Code of 1886, nevertheless it contains the elements of a contract complying with the statute of frauds. The cross bill is specific as to the written instrument, its substance and its execution and record. But if the proof fails to establish all the requirements of the statute as to such written instrument so as to effect a legal adoption, the cross bill should allege alternative facts justifying the relief of specific performance in order to obtain that relief. Such allegations may be set up however by an amendment to meet the state of proof that may be made in the case."

After remandment, testimony was taken before a commissioner. After much testimony had been taken, Lillie Luker amended her cross-bill in order to meet the objections pointed out in our opinion on first appeal.

Upon submission of the cause for final decree Lillie Luker, through her counsel, conceded that she had failed to prove the allegations of her said cross-bill, as amended, to the effect that she had been legally adopted by James E. and Emma Snead. This concession was based on the ground that the proof failed to establish the fact that there had been a compliance with § 2367 of the Code of 1886, the provisions of which section were controlling, since it was alleged the adoption had been legally effected in 1889.

However, upon submission for final decree, it was strenuously insisted by counsel for Lillie Luker that she was entitled to a decree of specific performance in view of our holdings in Prince v. Prince,

194 Ala. 455, 69 So. 906, and Benefield v. Faulkner, 248 Ala. 615, 29 So.2d 1.

The trial court denied all relief as prayed for in the cross-bill of Lillie Luker and dismissed her cross-bill. From that decree the said Lillie Luker has appealed to this court.

It is conceded here, as it was in the trial court, that the proof was not sufficient to justify a decree to the effect that Lillie Luker had been legally adopted as the child of James E. and Emma Snead. We quote from brief of counsel for appellant: "The claim of this Appellant cannot, of course, be sustained on the ground of a legal adoption since it is not proven that the necessary legal steps were taken to effect a statutory, legal adoption. The proof is lacking that a written instrument, such as the law then in force required, was ever filed in the Probate Office of Blount County."

The sole question presented here is whether the trial court erred in refusing to decree specific performance as prayed.

■ We think the evidence shows there was a common understanding between appellant and Mr. and Mrs. Snead that at the death of Mr. and Mrs. Snead appellant would inherit their property. Such an understanding is not sufficient to justify a decree of specific performance as prayed. Marietta v. Faulkner, 220 Ala. 561, 126 So. 635.

As heretofore shown, the proceedings in the instant case show that the question is with respect to the title to land; hence, the statute of frauds must have been complied with in order to have a decree of specific performance. Luker v. Hyde, supra, and cases there cited. The statute of frauds was pleaded.

There was no written instrument introduced in evidence tending to show any effort on the part of the Sneads to comply with the requirements of § 2367 of the Code of 1886, as was the case in Prince v. Prince, supra; nor was any

written instrument introduced signed by the Sneads wherein they agreed to take Lillie into their home and custody and to treat her and care for her as if she were their own child, as in Benefield v. Faulkner, supra.

Appellant sought to show that written instruments had existed but had been lost.

Although the appellant herself testified that she had never been shown any written instrument bearing on her adoption, her husband testified that about six years prior to Mr. Snead's death, the latter had exhibited to him a paper saying it was the adoption of Lillie Snead Luker. The husband did not read the instrument nor was it read to him.

Dewey Miller, a half-brother of appellant, testified that his father, Bill Miller, died in 1914 when the witness was about fourteen years of age; that shortly after his father's death he found a piece of tablet paper in his father's trunk, on which was written in ink the following statement: "To Whom this may concern: I adopted Lillie Miller to James E. and Emma Snead"; that his father's signature appeared beneath the statement; that it "seems like" the signature of Judge Davidson, a former Probate Judge of Blount County, was also on the paper.

Willouise Jenkins, who had been a bookkeeper for Mr. Snead, testified that some time within a period of six years prior to his death, Mr. Snead showed her a page of ruled tablet paper on which was written in Mr. Snead's handwriting the following: "To Whom it May Concern. I am this day giving Lillie to James and Emma Snead and I will cause them no further trouble." Immediately below the statement appeared the name "Bill Miller" in a different handwriting from that used in writing the statement. She could not say the statement was signed by the father of appellant, as she was not familiar with his handwriting. The paper which Mr. Snead showed her appeared to be old and the statement written thereon was undated.

F. S. Kinney testified that in August of 1900 when he was about eighteen years of age, Mrs. Emma Snead and Lillie, who was then a very young girl, came to the home of witness' mother for a visit. In reply to a question asked Mrs. Snead by the mother of witness as to whether "they had adopted Lillie or she was just living with them," Mrs. Snead replied, "We have adopted her. * * * Here are the papers." Whereupon Mrs. Snead removed some papers from her handbag and delivered them to witness' mother, who read the papers with some assistance from witness. Although the occurrence took place nearly fifty-one years before the time this cause was tried, the witness stated that he remembered that at the top of the paper appeared the words "Contract of Adoption." He remembered seeing the names of James E. Snead, Lillie Snead and Bill Miller on the paper, but was not sure that Mrs. Emma Snead's name was on the paper. He was not familiar with the handwriting of any person whose names appeared on the instrument. While the words "Contract of Adoption" were on the paper, he doesn't know the terms or provisions which were set out therein.

In this case the burden of proof is upon appellant to prove the contract of which she seeks specific performance by clear and satisfactory evidence. She must not only establish the execution of the contract and full performance of the same upon her part, but also must show that the agreement was full and complete, certain, fair and just in all its parts and provisions. Where the contract sought to be specifically enforced requires the making of a different disposition of the property of a deceased person from that which the law prescribes, a court of equity will look with jealousy upon the evidence offered in support of such contract and will weigh such evidence in the most scrupulous manner. Where the agreement is alleged to have been reduced to writing and been lost or destroyed and the agreement is attempted to be established by parol evidence, its existence and terms must

.be. established with the same certainty as if the contract rested entirely in parol. Mould v. Rohm, 274 Ill. 547, 113 N.E. 991; Hutton v. Busaytis, 326 Ill. 453, 158 N.E. 156; see Lamb v. Feehan, Mo., 276 S.W. 71; Box v. Box, 243 Ala. 437, 10 So.2d 478. .

The rule is well established in this jurisdiction that in order to enforce specific performance of a parol contract for the sale of lands, the terms of the contract must be definitely alleged and proven as alleged by clear and satisfactory proof. If the evidence fails to prove the contract, or if any of its terms are left in doubt or uncertainty, specific performance should be refused. Box v. Box, supra, and cases there cited. See Mould v. Rohm, supra.

In the present case there is not only grave doubt as to the existence of the contract relied on, but there is almost a complete absence of proof as to its terms and provisions. We are of the opinion that appellant has failed to establish the contract relied upon, and its essential terms and provisions by the character of evidence this class of cases require.

The result which we reach is harsh, for we are impressed by a reading of this record that Mr. and Mrs. Snead looked upon Mrs. Luker as their daughter and were desirous that she inherit their property, but equity has no power to declare an adoption. Having failed to prove a legal adoption under the applicable statute or an enforceable contract, we are constrained to the conclusion that the trial court was fully justified, under our holdings in Marietta v. Faulkner, supra, and Olive v. Olive, 221 Ala. 697, 127 So. 915, in denying the relief sought by appellant and in dismissing her cross-bill.

The decree of the circuit court is affirmed. ·

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.