122 So.2d 769

**Wyolene Josephine Teems WIGINTON**

v.

**Dora MILFORD, Adm'x.**

6 Div. 319.

Supreme Court of Alabama.

Aug. 18, 1960.

Rehearing Denied Sept. 15, 1960.

Drennen, Loeb & Drennen, Birmingham, for appellees.

Earl McBee and James & Beavers, Birmingham, and W. R. Tucker, Dawsonville, Ga., for appellant.

LIVINGSTON, Chief Justice.

This is an appeal from a decree of the Circuit Court of Jefferson County, Alabama, in Equity, disallowing or denying the claim of Wyolene Josephine Teems Wiginton to the assets of the estate of J. C. Teems, deceased, which consisted of both real and personal property.

J. C. Teems departed this life in Birmingham, Alabama, intestate, on or about the 18th day of October 1954. Mrs. Dora Milford, a sister of the deceased, J. C. Teems, was made administratrix of his estate on the 25th day of October 1954.

On the 22nd day of April 1955, Wyolene Teems Wiginton filed in the Probate Court of Jefferson County, a petition or bill of complaint against the administratrix of the estate of J. C. Teems, deceased, and other heirs at law and next of kin of J. C. Teems, praying that the complainant be adjudged the sole heir of the deceased, and that the administratrix pay over to complainant the assets of the deceased.

On August 3, 1956, the estate of J. C. Teems, deceased, was moved to the Circuit Court of Jefferson County, Alabama, in Equity. After the estate was removed to the Circuit Court, Wyolene Teems Wiginton amended her petition or bill of complaint. As last amended, the basis of her claim against the estate of J. C. Teems, deceased, appears to be two separate alleged contracts or agreements.

Wyolene Teems Wiginton alleged that she is the illegitimate daughter of Ida Brooks and J. C. Teems, deceased. She alleged that one contract was made by J. C. Teems in Georgia in 1919 with Wyolene's mother, Ida Brooks; and one made in 1937 or 1938, in Alabama, with Wyolene herself. In regard to the one made in Georgia in 1919, by and between her parents, J. C. Teems and Ida Brooks, it is alleged that J. C. Teems agreed with Ida Brooks that he would support and educate their illegitimate child, Wyolene, who would remain with her mother during her tender years provided Wyolene would come and live with him when she became older, and also that he would adopt Wyolene so that she could inherit his property. The other agreement was alleged to have been made between J. C. Teems and his daughter, Wyolene, in about 1937 or 1938. Wyolene alleged that her father agreed to buy a farm on Sand Mountain if Wyolene and her husband (Wyolene having married Wiginton in the meantime) would come live on the farm; that he did buy the farm, and Wyolene and her husband came to live on the farm and lived there 3 or 4 years; that Wyolene became sick with jaundice, and she and her husband moved back to Georgia in about 1941. Wyolene alleged that she agreed to come to Sand Mountain on the promise of her father to adopt her so that she could inherit his property.

The bill of complaint, or petition, as last amended, prayed that upon a final hearing the court would order, adjudge and decree that complainant is the sole and only heir of J. C. Teems, deceased, and would further order, adjudge, and decree that Mrs. Dora Milford, executrix of the estate of J. C. Teems, deceased, transfer, pay over and surrender to complainant all the assets which have come into her possession as such executrix, after all legal debts and administration costs have been paid, and such other or different relief to which she may be entitled in the premises.

Appellees' defenses as raised in the answer to the petition as last amended are as follows: (1) general issue, (2) failure

of consideration, (3) statute of frauds, and (4) laches.

Wyolene testified that she and her husband consulted a lawyer with reference to the legal adoption of Wyolene by her father, and that the attorney told them that under the alleged contracts adoption was not necessary.

There is much conflict in the evidence which was taken ore tenus before the trial court, except for the deposition of one witness. Some of the facts are undisputed; namely, J. C. Teems visited Wyolene on many occasions when she was living in Georgia; he did buy a farm on Sand Mountain; Wyolene and her husband did move to the farm on Sand Mountain for a period of about two years; J. C. Teems did visit his daughter on Sand Mountain many times, and he did send her money. It is also undisputed that Wyolene went by the name of her father. Her high school diploma and a certificate from the University of Georgia where she attended the extension department show that fact.

The final decree from which this appeal is taken denied, generally, the relief prayed for in the bill of complaint as last amended.

The ten assignments of error are to the effect that the court erred in rendering the decree that it did render and that it erred in not rendering a decree in favor of the complainant.

The decree of the trial court is due to be affirmed, and we will discuss only those matters arising under the general denial of the allegations of the bill of complaint.

■ The burden of proof was, of course, on the appellant to sustain her bill of complaint or petition. We have repeatedly held that where the testimony was heard orally by the trial court, that court's finding of facts is given the same weight as a jury verdict and will not be disturbed here unless palpably wrong. Gibson v. Anderson, 265 Ala. 553, 92 So. 2d 692, and cases there cited.

It is not questioned that Wyolene Teems Wiginton, the illegitimate daughter of J. C. Teems, deceased, could not inherit the estate of her father. Sec. 7, Title 16, Code of Alabama 1940.

The case of Luker v. Hyde, 260 Ala. 248, 69 So.2d 421, 425, was a bill filed to sell lands of tenants in common, or joint owners, in which an illegitimate daughter filed a cross bill claiming the lands in question by which she sought to establish her right as an adopted daughter to inherit from one Mrs. Emma Snead, deceased. The cross bill contained the alternative prayer for specific performance of a contract to adopt Mrs. Lillie Luker as a child of James E. and Emma Snead. In that case, this court said:

"In this case the burden of proof is upon appellant to prove the contract of which she seeks specific performance by clear and satisfactory evidence. She must not only establish the execution of the contract and *full performance of the same upon her part,* but also must show that the agreement was full and complete, certain, fair and just in all its parts and provisions. Where the contract sought to be specifically enforced requires the making of a different disposition of the property of a deceased person from that which the law prescribes, a court of equity will look with jealousy upon the evidence offered in support of such contract and will weigh such evidence in the most scrupulous manner. * * * (Emphasis supplied.)

"The rule is well established in this jurisdiction that in order to enforce specific performance of a parol contract for the sale of lands, the terms of the contract must be definitely alleged and proven as alleged by clear and satisfactory proof. If the evidence fails to prove the contract, or if any of its terms are left in doubt or uncertainty, specific performance should be refused. Box v. Box, supra,

and cases there cited. See Mould v. Rohm, supra.

"In the present case there is not only grave doubt as to the existence of the contract relied on, but there is almost a complete absence of proof as to its terms and provisions. We are of the opinion that appellant has failed to establish the contract relied upon, and its essential terms and provisions by the character of evidence this class of cases require.

"The result which we reach is harsh, for we are impressed by a reading of this record that Mr. and Mrs. Snead looked upon Mrs. Luker as their daughter and were desirous that she inherit their property, but equity has no power to declare an adoption. Having failed to prove a legal adoption under the applicable statute or an enforceable contract, we are constrained to the conclusion that the trial court was fully justified, under our holdings in Marietta v. Faulkner, supra, and Olive v. Olive, 221 Ala. 697, 127 So. 915, in denying the relief sought by appellant * * *."

In the case of Traurig v. Spear, Fla. App., 102 So.2d 165, 170, a Florida case, the court in discussing an agreement similar to the one complainant sought to have the trial court enforce, it was said:

"* * * Contracts of the character in question are asserted with such frequency that courts have grown conservative as to the nature of the evidence required to establish them and for their enforcement. Such contracts are easily fabricated and hard to disprove, from the nature of the circumstances in which the claim to them arises.

* * * * * *

"* * * the proof [in such cases] thereof must be clear, cogent and convincing, and the making of such oral contracts or agreements must be established by disinterested witnesses. * * *

"The requirement for strong evidence and positive proof of such contracts has been a matter of unvarying insistence by the courts. * * *"

But appellant argues that the decree of the trial court was against the great weight of the evidence, and indeed contrary to the undisputed evidence which established the making of the two contracts. Appellant relies largely on the statement of Justice Gardner in Henderson v. Henderson, 228 Ala. 438, 153 So. 646, 648, as follows:

"We have not overlooked the rule of presumption in favor of the trial court on the finding of facts when the testimony is orally taken, as here. * * * But our conclusion is rested upon facts which appear to be indisputably established, and under such circumstances the rule of course is without application. * * *"

We have no quarrel with the foregoing statement and its application to the particular case, but it is not applicable here.

In the case of Williams, Superintendent of Banks, v. Ellington, 233 Ala. 638, 172 So. 903, 906, the same Justice Gardner in a bill attacking as fraudulent and void a conveyance of certain described real estate made by W. J. Ellington to his wife, son and daughter, said as follows:

"Appellees argue that no witnesses are produced to contradict the testimony offered. But in cases of this character the courts recognize with what ease a consideration may be feigned, and that fraud may be shown by circumstances, the number and character of which cannot be defined. Each case must stand 'on the bottom of its own facts.' It can scarcely be said that any two are twin brothers, and it is but seldom that precedents are of practical value. Watters-Tonge Lumber Co. v. Knox, supra. And it has

**276**

been well said that 'a witness may be as thoroughly discredited by the inherent improbabilities of his testimony as by the direct testimony of witnesses.' In re Leslie (D.C.) 119 F. 406, 408. And 'evidence, even though uncontradicted, need not be accepted as proof of a fact, when it is contrary to all reasonable probabilities of the case.' 14 Ency. of Evidence, p. 132."

We are not unmindful of the decisions of this court and others, notably Prince v. Prince, 194 Ala. 455, 69 So. 906, 907, and Benefield v. Faulkner, 248 Ala. 615, 29 So.2d 1. In Prince v. Prince, supra, this court said:

"By the weight of authority, and upon the soundest principles of equity, justice, and sound policy, it is held that, although a declaration of adoption is invalid by reason of its noncompliance with statutory requirements, yet where the actual parent, or someone in loco parentis, has surrendered the custody of the child to the adoptive parent, upon the mutual agreement that such child shall be adopted by and made the legal heir of the latter, and this agreement is fully performed by the child, a court of chancery will decree a specific performance of the adoption contract by such parent, his heirs or representatives, to the extent of investing in the child the whole or such part of the adoptive parents' estate as he would have been entitled to receive under the adoption contract if properly executed. Kofka v. Rosicky, 41 Neb. 328, 59 N.W. 788, 25 L.R.A. 207, 43 Am.St.Rep. 685; Wright v. Wright, 99 Mich. 170, 58 N.W. 54, 23 L.R.A. 196; Van Tine v. Van Tine (N.J.[Ch.]) 15 Atl. 249, 1 L.R.A. 155; Van Dyne v. Vreeland, 11 N.J.Eq. 370; Godine v. Kidd, 64 Hun 585, 19 N.Y.Supp. 335; Burns v. Smith, 21 Mont. 251, 53 Pac. 742, 69 Am.St.Rep. 653; Chehak v. Battles, 133 Iowa 107, 110 N.W. 330, 8 L.R.A. (N.S.) 1130, 12 Ann.Cas. 140; Hood v. McGehee

(C.C.) 189 Fed. 207; 1 R.C.L. § 28; 1 Cyc. 936."

 Clear enough, the evidence in this case is in conflict. It would serve no good purpose to detail and analyze the evidence contained in the record. The burden was on petitioner, or complainant, to satisfy the trial court by that measure of proof outlined above of the existence of the two contracts relied on by her. We are clear to the conclusion that she has failed to meet this burden, and the case is due to be, and is, affirmed.

Affirmed.

LAWSON, STAKELY and MERRILL, JJ., concur.