STEAGALL, Justice.
Mary Lenora Person, as administratrix of the estate of John Hovey, filed a declaratory judgment action, seeking a determination that Cathy Nance,[1] born Nancy Sue Quinton, was not the adopted daughter of John Hovey and, therefore, was not entitled to a distribution of the assets of his estate. Nance counterclaimed for specific performance of an alleged contract for adoption between her natural mother, Lillie Inez Quinton, and John Hovey and his wife, Louise. The circuit court[2] found that *266 there was no adoption contract and held that Nance was not an heir to John Ho-vey’s estate.
Nancy Sue Quinton was born on November 16, 1950, in Phenix City. The following day, her mother filed a consent to adoption in Russell County Probate Court. On January 24, 1951, John and Louise Hovey filed a petition for leave to adopt Nancy Sue Quinton and to have her name changed to Catherine Ann Hovey. That petition was granted in an interlocutory order by the Russell County probate judge on March 26, 1951. The Russell County Department of Public Welfare moved to revoke the interlocutory order on August 12, 1953, and that motion was granted by the probate judge on August 14, 1953.
The circuit court made the following findings of fact and conclusions of law:

“Findings of Fact:

“[1] On the 16th day of November, 1950, the Defendant Kathy Nance was born to Lillie Quinton in Phenix City, Alabama.
“[2] On the third day after her birth, Defendant was allowed by Defendant’s mother to be taken from the hospital and to live with John and Louise Hovey, who had taken care of Defendant’s mother while she was unable to work. The Defendant’s mother further allowed this as she had no money or place (home) to take the child when she got out of the hospital. The understanding was that John and Louise Hovey would ultimately adopt Kathy Nance. Defendant’s mother even signed a consent to adoption on November 17, 1950, consenting to the adoption by the Hoveys. The Hoveys had Defendant ‘christened on December 25, 1950, as “Catherine Ann Hovey.” ’ The Hoveys even petitioned the Probate Court of Russell County, Alabama, in January of 1951 to adopt Nancy Sue Quinton and to change her name to Catherine Ann Hovey. The adoption was never consummated. John Hovey had brushes with the law which on occasion caused him to flee. John Hovey ultimately was charged with the commission of a crime or crimes; was convicted and served a state penitentiary sentence.
“[3] John and Louise Hovey separated when Defendant was approximately five years of age.
“[4] John Hovey always in correspondence referred to Kathy Nance as his daughter and signed letters as being her ‘dad or daddy.’ One of John Hovey’s sisters referred to Defendant and thought of her as her relative or ‘niece’ and to Defendant called herself ‘Aunt Jessie.’
“[5] Kathy Nance was never adopted by John Hovey, a man versed in business and knowledge of legal affairs. He was represented for more than twenty years by counsel. This lack of an adopted status was made known by John Hovey to Kathy Nance and well understood by John Hovey, his attorney and Kathy Nance years before his death.
“[6] Kathy Nance even used her natural mother’s name at the time she applied for a marriage license and marriage at her age of sixteen years. This fact indicates even then Defendant knew she was not legally adopted by Hovey. She also made known during her teen years that she was embarrassed John Hovey was a convicted criminal and chose to use her natural name, Quinton.
“[7] Kathy Nance is not John Ho-vey’s legal child.
“[8] Kathy Nance is not an heir or devisee of the estate of John Hovey, deceased, by Will or otherwise.
“[9] Kathy Nance is not legally entitled to any distribution of the assets of the estate of John Hovey, deceased.
“[10] That Kathy Nance is not entitled to specific performance of any alleged contract for adoption as there is no proven ‘valid and enforceable contract for adoption’ as was accomplished in Prince v. Prince, 194 Ala. 455, 69 So. 906 [ (1915) ]. In the instant case, it is clear that John Hovey and Kathy Nance were and had been for many years fully aware that Kathy Nance had never been by John Hovey adopted. When old enough to make her own decisions, Kathy Nance *267 never fully performed her duties as an adopted daughter and the evidence shows a break in the relationship of an adopted child and parent.
“[11] That Mary Lenora Person, as Administratrix, may proceed to make a final distribution of the assets of the estate of John Hovey, deceased, consistent with the findings of this court.
“[12] IT IS THEREFORE ORDERED that Kathy ‘Cathy’ (Nancy Sue Quinton) NANCE is not an heir or legatee of the estate of John Hovey, deceased, so as to entitle her to a distribution of the assets of said estate by will or otherwise.
“[13] IT IS FURTHER ORDERED that specific performance of an adoption contract to the extent of investing the Defendant [with] the whole or such part of the estate of John Hovey, deceased, as Defendant would have been entitled to receive under the alleged adoption contract if properly executed is hereby denied.
“[14] IT IS FURTHER ORDERED THAT MARY LENORA PERSON as ad-ministratrix of the Estate of John Hovey, deceased, proceed to make distribution of the assets of the estate of John Hovey, deceased, consistent with the findings and orders of this court.
“Done this the 16th day of July, 1989.”
(Emphasis original.)
The Prince case on which the trial court relied established this general rule:
“[Although a declaration of adoption is invalid by reason of its noncompliance with statutory requirements, yet where the actual parent, or some one in loco parentis, has surrendered the custody of the child to the adoptive parent, upon the mutual agreement that such child shall be adopted by and made the legal heir of the latter, and this agreement is fully performed by the child, a court of chancery will decree a specific performance of the adoption contract by such parent, his heirs or representatives, to the extent of investing in the child the whole or such part of the adoptive parents’ estate as he would have been entitled to receive under the adoption contract if properly executed.”
194 Ala. at 457-58, 69 So. at 907 (citations omitted) (emphasis added).
The Prince case involved a declaration of adoption executed by the foster father, W.T. Prince, that was filed in the probate office but did not have the acknowledgment required by statute. That document read, “I desire to adopt and do hereby adopt Simeon Jones ... so as to make him ... capable of inheriting my estate, real and personal.” 194 Ala. at 456, 69 So. at 907 (emphasis added). The Court in Prince held that, notwithstanding the adoption paper’s failure to constitute a legal adoption, there was evidence of a contractual relation between W.T. Prince, the decedent, and the child because Prince’s conduct and declarations showed that he intended for the child to be his heir. The opinion emphasized that:
“A distinction must, of course, be recognized between a mere agreement to adopt, and an agreement to make the child a beneficiary of property, either by heirship or by deed or testament.... It must be conceded that equity will not enforce a mere agreement to adopt....
“The decisive question, then, in this case, is whether the adoptive father agreed with complainant’s mother, not only to adopt him, but also to make him the inheritor of his estate."
194 Ala. at 458, 69 So. at 907.
Closely analogous to Prince is Benefield v. Faulkner, 248 Ala. 615, 29 So.2d 1 (1947), in which a contract for adoption was ineffective as a legal adoption because it was neither acknowledged nor recorded. Unlike the document in Prince, the contract in Benefield v. Faulkner contained no language of inheritance. Nonetheless, the Court found that the facts and circumstances evidenced an intent on the part of the alleged adoptive father to give the child a right of inheritance. Construing Prince, the Benefield Court stated:
“The reasoning of the [Prince ] opinion was to the effect that where the actual parent, or one standing in loco parentis, has surrendered the custody of the child *268 to the adoptive parent, upon the mutual agreement that such child shall be adopted by and made the legal heir of the latter, ... a court of equity will decree a specific performance of the adoption contract by such parent.... This same authority is likewise to the effect there must appear the adoption was of such a nature as to indicate a purpose to make the child capable of inheriting the estate of the adoptive parent — and not a mere agreement to adopt.”
248 Ala. at 618, 29 So.2d at 3 (emphasis added).
The Benefield court further made it clear that, pursuant to such an adoption contract, the child must perform his or her filial duties. In other words, there must not be any break in the relationship between the parent and child. A case subsequent to Benefield, Luker v. Hyde, 260 Ala. 248, 253, 69 So.2d 421, 425 (1953), confirmed this requirement by stating that the child “must not only establish the execution of the contract and full performance of the same upon her part, but also must show that the agreement was full and complete, certain, fair and just in all its parts and provisions.”
In the present case, the trial court correctly stated that there was no legal adoption of Nance by the Hoveys. There is also no evidence in the record of a written contract for adoption and no evidence that John Hovey intended Nance to have a right of inheritance regarding his estate. Furthermore, while the record contains copies of numerous cards from John Hovey to Nance as well as evidence that he considered her his daughter, the trial court specifically found that “[w]hen old enough to make her own decisions, Kathy Nance never fully performed her duties as an adopted daughter and the evidence shows a break in the relationship of an adopted child and parent.”
We recently reiterated the standard of review in ore tenus cases in Humphries v. Whiteley, 565 So.2d 96 (Ala.1990):
“ ‘[Wjhere a trial court has heard ore tenus testimony, as in this case, its judgment based upon that testimony is presumed correct and will be reversed only if, after consideration of the evidence and all reasonable inferences to be drawn therefrom, the judgment is found to be plainly and palpably wrong.’ McInnis v. Lay, 533 So.2d 581, 582 (Ala.1988) (citation omitted). Furthermore, ‘[tjhis Court ... will affirm the trial judge’s decision if, under any reasonable aspect, it is supported by any credible evidence.’ Chism v. Hicks, 423 So.2d 143, 144 (Ala.1982) (citation omitted) (emphasis added). Finally, ‘[tjhis Court cannot overturn [thej finding[sj of fact by the lower court unless the decision is unsupported by the evidence ... and is plainly and palpably erroneous.... Further, the presumption of correctness exists even though there may be conflicting evidence.’ Kershaw v. Knox Kershaw, Inc., 523 So.2d 351, 356 (Ala.1988) (citations omitted) (emphasis added).”
565 So.2d at 102.
Absent either a legal adoption or a valid, enforceable contract, the only available conclusion regarding Nance’s status is that reached by the trial court. In affirming the judgment, we find the conclusion in the Luker v. Hyde, supra, case particularly apropos:
“The result which we reach is harsh, for we are impressed by a reading of this record that Mr. and Mrs. Snead looked upon Mrs. Luker as their daughter and were desirous that she inherit their property, but equity has no power to declare an adoption. Having failed to prove a legal adoption under the applicable statute or an enforceable contract, we are constrained to the conclusion that the trial court was fully justified, under our holdings in Marietta v. Faulkner, [220 Ala. 561, 126 So. 635 (1930) ], and Olive v. Olive, 221 Ala. 697, 127 So. 915, in denying the relief sought by appellant and in dismissing her cross-bill.”
Luker v. Hyde, 260 Ala. at 254, 69 So.2d at 425 (emphasis added).
*269 The judgment of the trial court is, therefore, affirmed.
AFFIRMED
HORNSBY, C.J., and MADDOX, ALMON and ADAMS, JJ., concur.

. This party’s first name is spelled interchangeably with a "C" and a "K” throughout the record. The case is styled with the name "Cathy."

. This case was removed from the Pike County probate court to circuit court on November 28, 1988.