Earl Chamblee died intestate on May 30, 1998, in Jefferson County. Daniel B. Samek and Harold W. Schultze, his stepsons, filed a complaint seeking a determination of heirship. Their complaint asked the Jefferson Probate Court to declare that they had been "equitably adopted" by Chamblee and thus were heirs to his $2.5-million *Page 873 
estate. The probate court rejected their claim. They appealed. We affirm.
Probate Judge George R. Reynolds tried the case, and the trial lasted four days. Judge Reynolds entered an order that reads as follows:
"ORDER
 "This matter comes before the court upon the Verified Complaint for Determination of Heirship, as amended, filed by Daniel B. Samek and Harold Schultze in the Estate of Earl Chamblee, deceased. After having heard extensive testimony presented by all parties, this Court makes the following findings of fact:
 "In 1944 Earl Chamblee married the Plaintiffs' mother, Genevieve Scoby Samek. Although no marriage certificate was located or produced, there is no question that Earl and Genevieve began holding themselves out to be husband and wife in the summer of 1944 and thus [were, at the least, married by the common law]. At the time of Earl's marriage to Genevieve, her son Harold Schultze was eighteen years old and an active member of the United States Coast Guard. Daniel Samek, having been born on August 25, 1930, was at least thirteen years old at the time of this marriage. Both Schultze and Samek had been abandoned by their natural fathers at very early ages.
 "Earl was on active duty with the military from August 1943 until March 1946. Upon his release from the military, Earl set up household with his wife, Genevieve, and initially Daniel Samek and Harold Schultze. Schultze married in October 1946 and Samek married in January 1949. Earl operated a full service gas station at which he employed both Schultze and Samek. Schultze worked at the station for only a short period of time before finding other employment. Earl Chamblee employed Samek until 1962 at which time Samek moved to California. During the periods of employment, the Plaintiffs testified[,] Earl paid them an hourly wage as he did other employees who worked for him. Samek testified that prior to his graduation from high school, his wages were used to purchase school lunches, books, clothing, sports equipment and other items that his mother could not afford to buy for him. After completing high school, both Samek and Schultze paid room and board to Earl during the period that they resided in his home.
 "In 1967 Genevieve died. The Plaintiff, Harold Schultze, last saw Earl at the time of his mother's funeral and no evidence was offered to suggest that he maintained any relationship with Earl after Genevieve's death. Daniel Samek did continue to maintain a relation-ship with Earl after his mother's death in 1967. However, most of this relationship was maintained by way of short notes or cards sent by Samek to Earl until 1992. There was a period of approximately (20) years between the 1970's and 1992 when Samek did not know where Earl lived or that Earl had been living with an individual by the name of Nellie Dorough during that time period. In 1992, Earl was hospitalized for heart surgery. Samek was contacted and came to Birmingham to assist Earl after the surgery. During a second hospitalization in 1992, Earl signed a Power of Attorney naming Samek as his attorney in fact. From that point in time Samek and Earl's contact became more frequent and regular.
 "According to Samek's testimony it was after 1992 that the discussion of adoption first arose between him and Earl. According to Samek, Earl asked, *Page 874 
`Is it too late to adopt you?' Also, according to Samek, this was the first time that Earl told him that he wanted Samek to have his assets at his death. During this time Earl on occasion referred to Samek as his son, referred to him affectionately and told others that he wanted Samek to inherit from him. Samek on several occasions urged Earl to prepare a will and went so far as to provide Earl with information concerning estate planning and the need for a will. Further, there were others who advised and discussed with Earl the fact that he would need a will if he wanted Samek to inherit from him.
 "On May 30, 1998, Earl Chamblee died intestate. Samek and Schultze seek from this Court an order proclaiming them to be the equitably adopted children of Earl Chamblee and thus entitled to inherit from his estate. In order for this Court to find that an equitable adoption exists, it must look to determine whether there was a contract to adopt between the decedent and the Plaintiffs for the purpose of inheritance and if so, [if that contract is] sufficient in its terms and form to allow enforcement by specific performance.
 "There is no evidence of a written contract executed by Earl Chamblee pertaining to his adoption of the two stepsons. The only evidence of an oral agreement to adopt comes from the testimony of Samek. Samek's testimony is that his mother `told us that Earl was our dad and that we were in all forms a family, that they would take care of us and we would take care of them, if need be.' Earl was not present when this statement was made and there is no evidence that he ever ratified any such statement made by his wife. The only evidence that Earl ever mentioned adoption occurred after Earl's 1992 hospitalization. In 1990, sections 43-4-1 through 43-4-4 of the Alabama Code (1975) allowing adoptions of adults was repealed by Acts 1990, No. 90-554, § 38. This Act became effective on January 1, 1991. In order to be equitably adopted, you must be capable of being legally adopted. If this Court were to take the alleged question propounded by Earl Chamblee in 1992 or thereafter as an intent to adopt, it could not find that an equitable adoption occurred at that time since both Samek and Schultze were adults and not capable of being adopted under the laws of Alabama.
 "Without an express contract the Plaintiffs must establish that the facts and circumstances surrounding their relationship with the decedent were such that an implied contract to adopt, that could be specifically enforced, existed between them. [The plaintiffs were not] infants or even toddlers at the time of their mother's marriage to Earl. Rather, Samek was a teenager and Schultze was fully grown and serving in the military. Both Samek and Schultze referred to the decedent as Earl and not father. Neither Samek nor Schultze took the surname of Chamblee as [his] own. Because Schultze only lived with Earl for a short time after his return from the military, Earl never assumed or performed the duties and burdens incident to parenthood toward Schultze. Likewise, Schultze did not perform the services, love, relationship and duties of a natural child towards Earl. Neither of the Plaintiffs attended family functions, such as Sunday dinner, holiday gatherings, weddings or funerals associated with Earl's biological family.
 "Although Samek did maintain a lifelong relation-ship with Earl, this relationship was not such that the Court could find that there was an implied contract to adopt. While Earl had almost no *Page 875 
relationship with his living heirs-at-law and no reason to share his estate with them, he was aware that he would have to make a will if he wanted Samek to inherit from him and yet he failed to do so.
 "The Court's sympathy favors Samek as a beneficiary of Earl's estate, but the evidence fails to establish the existence of a definite and specific contract to adopt Samek and Schultze for the purpose of inheritance. Without the existence of a contract, whether written, oral or implied by the conduct of the parties, there can be no equitable adoption. Accordingly, it is hereby
 "ORDERED, ADJUDGED and DECREED that the Plaintiffs, Daniel B. Samek and Harold Schultze were not equitably adopted by the deceased, Earl Chamblee, and are therefore not heirs and next-of-kin of Earl Chamblee and thus not entitled to inherit from his estate.
"Done this 30th day of July, 1999
"/s/ George R. Reynolds
"Judge of Probate"
As previously stated, Earl Chamblee's estate included assets worth $2.5 million. The plaintiffs claim a right to inherit Chamblee's estate under the doctrine of equitable adoption or adoption by estoppel.
The plaintiffs contend that the trial court erred in ruling that a finding of equitable adoption is appropriate only when the plaintiff has clearly proved a definite contract not only to adopt, but to adopt so as to allow the adoptee to inherit, and for which specific performance could be enforced. We disagree.
Adoption is purely statutory; it was never recognized by the rules of the common law. Hanks v. Hanks, 281 Ala. 92, 99, 199 So.2d 169, 176
(1967). "Equitable adoption is rarely recognized in Alabama and generally requires a finding of an intent to adopt." J.N.H. v. N.T.H., 705 So.2d 448,452 (Ala.Civ.App. 1997), citing C.H.H. v. R.H., 696 So.2d 1076
(Ala.Civ.App. 1996); and see Hebert v. Stephenson, 574 So.2d 835
(Ala.Civ.App. 1990). On those rare occasions when this Court or the Court of Civil Appeals has recognized an equitable adoption, it has recognized it only when a definite contract was clearly proven, not only to adopt, but to adopt so as to permit the adoptee to inherit, and the contract was one for which specific performance could be enforced.C.H.H. v. R.H., supra., at 1078, citing Prince v. Prince, 194 Ala. 455,69 So. 906 (1915).
The plaintiffs argue that the probate judge erred in requiring that the plaintiffs prove a contract either between Earl Chamblee and the plaintiffs or between Earl and Genevieve. Samek testified it was after 1992 that he discussed adoption with Earl. According to Samek, Earl asked, "Is it too late to adopt you?" As the trial judge's order states, the Alabama statutes allowing adoption of adults, §§ 43-4-1 through -4, Ala. Code 1975, were repealed effective January 1, 1991. In order to be equitably adopted, one must be capable of being legally adopted — and Samek and Schultze could not have been adopted by Earl in 1992.
As to a possible contract between Earl and Genevieve, Samek testified that his mother told him "that she and Earl had agreed that Harold and I were the children of the marriage and that we were to be adopted." As the trial judge stated, the parties presented no evidence indicating that Earl was present when this statement was made and there was no evidence that he ever ratified any such statement made by his wife. A close reading of the trial court's order shows that the trial court looked for evidence of a contract, but found no evidence that would support a *Page 876 
finding of a contract that would be subject to an order of specific performance. Samek and Schultze produced no evidence of a contract to adopt, and certainly no evidence of a specifically enforceable contract by Earl to adopt them so that they could inherit from him. See Luker v.Hyde, 260 Ala. 248, 69 So.2d 421 (1953).
The plaintiffs' claim of equitable adoption was presented to the court on ore tenus evidence. The judgment of a trial court based on ore tenus evidence is presumed correct, and its findings on such evidence "will not be disturbed on appeal unless they are palpably wrong, manifestly unjust, or without supporting evidence." McCoy v. McCoy, 549 So.2d 53, 57
(Ala. 1989). See also McCrary v. Butler, 540 So.2d 736 (Ala. 1989);Jones v. Jones, 470 So.2d 1207 (Ala. 1985); Clark v. Albertville NursingHome, Inc., 545 So.2d 9, 12-13 (Ala. 1989). We cannot say the trial court committed plain and palpable error in refusing to find that Chamblee had equitably adopted his stepsons.
Finally, the plaintiffs take issue with this wording in the trial judge's order:
 "The only evidence of an oral agreement to adopt comes from the testimony of Samek. Samek's testimony is that his mother `told us that Earl was our dad and that we were in all forms a family, that they would take care of us and we would take care of them, if need be.'"
The wording the judge was quoting actually comes from Samek's testimony in a deposition that was attached to Samek and Schultze's motion for summary judgment. The plaintiffs argue that the trial court erred by resting its judgment on evidence that was not offered at trial. However, if this was error, the error was harmless. See Rule 45, Ala.R.App.P. Samek testified to the substance of this conversation several times during the trial. Samek's testimony at trial concerning what his mother told him upon her return from Seattle was as follows:
 "A. She said that she and Earl had agreed that Harold and I were the children of the marriage and that we were to be adopted."
Later, Samek testified:
 "A. Yes. She told me that Earl was now my father and my brother's father and they had agreed that we were going to be their children and they were going to be our parents. I was 13 or 14 years old. I said, `That's great with me.'"
The trial court's use of the quoted words from the deposition was harmless error in that those words fairly summarize the substance of the testimony; simply removing the quotation marks would cure any error. We will not reverse a judgment unless "the error complained of has probably injuriously affected substantial rights of the parties." Rule 45, Ala.R.App.P.
The trial judge heard ore tenus evidence, and it properly applied the law to that evidence. Its judgment is affirmed.
AFFIRMED.
HOOPER, C.J., and HOUSTON, SEE, and BROWN, JJ., concur.