## CLARA DAVIDSON FISHER, Appellant, v. AUGUSTA DAVIDSON, Administratrix.

### Division One, June 1, 1917.

1. **CHILD: Adoption: Parol Contract With Grandparents.** Where a husband and wife, who had no children of their own, agreed with the grandparents of a little girl four years old, whose mother ·had died and whose father had turned her over to said grandparents and abandoned her, to take and rear the child as their own, that the grandparents were to have no further control over her and that she was to assume their name; and said agreement was fully carried out, and she was taken into their home, given their name, and treated as their own child, and continued to be considered and was known in the community as their own or adopted child until her marriage and the death of the husband, she was, if all these things had occurred in Missouri, his adopted child, and upon his death intestate entitled to inherit his property subject to the statutory interests of the widow.

2. ——: ——: ——: **Kansas Statute.** And where the parol agreement was made in Kansas and the adopting father afterwards moved to Missouri with his wife and child and . died here, and no property is sought by the suit to be reached in Kansas, the

Kansas statute, providing for adoption by petition and order of the probate court, which was not complied with, does not, after the death of the adopting father, preclude the child from maintaining an equitable suit in Missouri to have enforced the parol contract, which has been specifically performed, and to have her status decreed to be that of an adopted child, with the inheritable rights of a natural-born child.

3. **PRACTICE: Suit in Equity: No Instructions: Effect of Finding for Defendant.** A court of equity alone has jurisdiction to enforce a parol agreement to adopt an infant child; and where the petition set out the facts which entitled her to a decree that she is decedent's adopted child and asked the court to decree accordingly, and the case was tried throughout as an equity suit, the case will not on appeal be treated as an action at law.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern*, Judge.

REVERSED AND REMANDED (*with directions.*)

*E. C. Hall* and *George C. Hill* for appellant.

(1) The oral contract by which Dr. Davidson agreed to take, adopt and care for plaintiff as his own child, though not in conformity to the requirements of the law, was fully performed and fully executed, and by which Dr. Davidson and his wife received from plaintiff full consideration, will be enforced against the estate and heirs of the adoptive parents in equity on the principle that equity treats that which should have been done to make the adoption regular in law as having, in fact, been done, in order to avoid great injustice and hardship on the innocent, helpless child. Lynn v. Hockaday, 162 Mo. 111-148; Hockaday v. Lynn, 200 Mo. 456; Healey v. Simpson, 113 Mo. 340; Thomas v. Maloney, 142 Mo. App. 193; Sharkey v. McDermott, 91 Mo. 647; 1 Story's Eq. Jur. (12 Ed.) 648; Martin v. Martin, 250 Mo. 539. (2) When, and after, a child is adopted, it becomes and is, for all the purposes of inheriting from the foster-parents, the lawful child of such adoptive parents. R. S. 1909, sec. 1673; Moran v. Stewart, 122 Mo. 295; Moran v. Stewart, 132 Mo. 73;

Hockaday v. Lynn, 200 Mo. 464-7; Thomas v. Maloney, 142 Mo. App. 198; Fosburgh v. Rogers, 114 Mo. 133; Westerman v. Schmidt, 80 Mo. App. 348. (3) This is a proceeding in equity, and it will be presumed that the equity doctrine in the State of Kansas, where a part of the contract was performed, is the same as in this State. Johnson v. Gawtry, 83 Mo. 339; Monroe v. Douglass, 5 N. Y. 452; Chapin v. Dobson, 78 N. Y. 79; Anderson v. Anderson, 75 Kan. 129. And a contract good according to the law, either of the place of contract or of performance, will be presumed to have been made in view of the law of the place where it would be good. 9 Ency. Law & Proc. 674; Minor on Conflict of Laws, sec. 151. (4) The implied covenant arising from a contract to adopt not legally executed, when the child has fulfilled its part of the contract, is that the infant should receive a child's share of the estate of the foster-parents. 1 Ency. Law & Proc. 936; Fosburgh v. Rogers, 114 Mo. 133; Moran v. Stewart, 122 Mo. 299. (5) Equity will decree an adoption and its resultant rights in cases where no statutory adoption exists, when to do otherwise would result in palpable injustice. Thomas v. Maloney, 142 Mo. App. 193; Lynn v. Hockaday, 162 Mo. 111; Horton v. Troll, 183 Mo. App. 677; Healey v. Simpson, 113 Mo. 340; Martin v. Martin, 250 Mo. 539.

*Cook & Gossett* and *George N. Elliott* for respondents.

(1) The findings of the trial court in favor of defendants will not be disturbed, except upon strong proof that they are against the clear weight of the evidence. Roberts v. Roberts, 223 Fed. 777; United States v. Marshall, 210 Fed. 595; Vaughn v. Vaughn, 251 Mo. 441; Phillips v. Trust Co., 214 Mo. 669; Creamer v. Bivert, 214 Mo. 473; Nevius v. Moore, 21 Mo. 330; Barnard v. Keithley, 230 Mo. 209. (2) If there was any oral agreement at all to adopt, it was a Kansas contract of which the Kansas statute law and the decisions of the Kansas Supreme Court on the subject of adoption of children were of the terms of the alleged contract. Tremain v. Dyott, 161 Mo. App. 221. The Kansas procedure for adoption of children then

was, and ever since has been, by petition, and order in probate court. Parents must consent. If dead, proof of death must be made and consent of guardian given. Sec. 5065, R. S. Kan. 1909; G. S. Kan.; 1868, ch. 67, secs. 5 and 6, as amended by Laws 1903, ch. 361, sec. 1; G. S. Kan., secs. 4186, 4187, 4188; Cubitt v. Cubitt, 74 Kan. 353; Renz v. Drury, 57 Kan. 89. (3) The status of Clara in the family of Thomas Davidson was fixed at the time they moved to Missouri, when Clara was twelve years of age. She was not then an adopted child under the laws of Kansas. There is no allegation of renewal of adoption agreement under Missouri law. This action is based solely upon the alleged original agreement. The status of Clara in the family at the time of the death of Thomas Davidson was the same as if they had continued to live in Kansas until the death of Thomas Davidson, without complying with the Kansas laws of adoption. Steele v. Steele, 161 Mo. 574; Kinney v. Murray, 170 Mo. 691. (4) Comity between the States of this Union gives credit only to *status* acquired under laws of a sister State. Finley v. Brown, 122 Tenn. 338; Ross v. Ross, 129 Mass. 246. Comity does not enlarge rights in State of domicile except when *status is complete*. Finley v. Brown, 122 Tenn. 31; In re Sanderson's Est., 60 Iowa, 732; Calhoun v. Bryant, 28 S. D. 275; Boaz v. Boaz, 79 Kan. 332; In re Bewley, 134 Pac. (Cal.) 690; In re Wells, 60 Wash. 520. (5) If the alleged contract was ever made, there is no evidence that it was made with the view to its performance in Missouri or Arkansas. Thomas Davidson had no intention then to move with his family to Missouri or Arkansas. He owned no real estate or other property at that time in Missouri or Arkansas. There is no fact or circumstance to show that the Missouri or Arkansas law of adoption of children ever became a part of any agreement between the parties on the subject. Kinney v. Murray, 170 Mo. 691. In all the authorities cited by appellant, of which Buck v. Meyer, 190 S. W. 997, and Lindsley v. Patterson, 177 S. W. 826, are examples, where the alleged contract was entered into outside of Missouri, it was made directly with the view to performance in Missouri. (6) The specific term of such oral contract when

established by probative force equivalent to being set out in writing must show intention to adopt by use of the term itself, or of words equivalent thereto beyond a reasonable doubt. The words, "I agree to take her and care for her as my own child," without the use of the term "adopt," or without the additional agreement "and make her my heir," do not constitute a contract to adopt. Lynn v. Hockaday, 162 Mo. 116; Hockaday v. Lynn, 200. Mo. 471; Healy v. Simpson, 113 Mo. 340; Thomas v. Maloney, 142 Mo. App. 198; Sharkey v. McDermott, 91 Mo. 654; Martin v. Martin, 250 Mo. 551; Sec. 1671, R. S. 1909; Fosburgh v. Rogers, 114 Mo. 131; Moran v. Stewart, 122 Mo. 299. (7) On this appeal the first count of plaintiff's amended petition must be disposed of as an ordinary action at law to quiet title to real estate, as provided by Sec. 2535, R. S. 1909. No equitable relief is prayed for. Laclede Land & Improvement Co. v. Goodno, 181 S. W. 412. The case was tried by the court without a jury and without instructions. The decision of the trial court is conclusive against appellant on first count of the petition. Buford v. Moore, 177 S. W. 872.

RAILEY, C.—This suit was commenced by plaintiff in the circuit court of Jackson County, Missouri, on May 8, 1913, in two counts. The first alleges that plaintiff, whose name was originally Wilson, was born in Minnesota, on April 16, 1882; that her mother died in 1883, and left plaintiff in charge of her maternal grandparents, Truman Finch and wife; that on the —— day of April, 1886, Thomas Davidson and wife, who were childless, adopted plaintiff as their child, although no formal deed of adoption was executed; that said Davidson and wife took charge of plaintiff, changed her name from Wilson to Davidson, and that she was thereafter treated as the child and adopted daughter of said Davidson; that the said Thomas Davidson died intestate, as a resident of Kansas City, Missouri, while the owner of certain real and personal property, located in Missouri and Arkansas; that defendant, Augusta Davidson, is his widow, was appointed administratrix of his estate at Kansas City, Missouri, and

duly qualified as such; that the other defendants are the collateral kin of said decedent; that plaintiff is the only heir and child of said decedent; that she is the owner of all the real and personal property owned by decedent, subject to the statutory interests of said Augusta Davidson, in Missouri and Arkansas. A decree is prayed for declaring that plaintiff is the adopted child of said decedent, Thomas Davidson, and that she is the absolute owner of all the real and personal property owned by decedent at the time of his death, subject to the statutory interests of said widow, etc.

The second count of said petition practically covers the same matters contained in the first count and seeks to compel defendants to specifically perform said contract of adoption, etc.

Both counts allege that plaintiff married Charles Fisher in 1904.

The separate answer of Augusta Davidson, individually and as administratrix, admits that she is the widow of Thomas Davidson, deceased, and administratrix of his estate; that she is entitled to the personal property of decedent and to all her marital interests and estates therein, as well as in his realty. She denies every other allegation in the petition. She likewise pleads the statute of Kansas and two decisions of said State, in bar of plaintiff's right to maintain this action, on account of the alleged adoption not being in conformity to the laws of said State. The remaining defendants joined in a separate answer; admitted that Thomas Davidson died January 16, 1913, leaving as his widow, the defendant, Augusta Davidson; that she was appointed administratrix by the probate court of Jackson County, Missouri, and duly qualified as such; that decedent, at the time of his death, was seized of the real estate and personal property described in the petition; that they are the collateral heirs of said decedent and claim therein an inheritable interest in the property aforesaid, as his only heirs, subject to the rights of said widow. The answer denied all the other allegations of plaintiff's petition and set up the Kansas statute and decisions as a bar to plaintiff's right of recovery.

The reply alleges that plaintiff's father abandoned and turned her over to her grandparents, Truman Finch and wife, who had authority to make the contract of adoption set out in the petition; that decedent had full knowledge of said facts at the time of said adoption; that said agreement was made in the State of Kansas.

*Admitted Facts.* The following facts were admitted by counsel during the trial: That Dr. Davidson died in Arkansas, January 16, 1913; that he left no descendants; that Augusta Davidson was appointed administratrix of his estate by the probate court of Jackson County, Missouri, and qualified as such, in respect to the Missouri property; that the other defendants are the brother and sisters, nephew and niece of decedent; that plaintiff, Clara Fisher, married on November 24, 1904.

It appears from the evidence that plaintiff, who was the daughter of Arthur Wilson and wife, was born in Minnesota, about 1882, and that her mother died some time in 1883. Plaintiff was the youngest of five children. After the mother's death, the plaintiff's father took her to her maternal grandparents. The latter came with plaintiff and a brother, or sister, to the home of John Hallock and wife in Phillips County, Kansas. Plaintiff was about three years of age at that time. Her grandparents were poor and they tried to find a home or place for her to live. There were eleven in the Hallock family after plaintiff's arrival, and all were occupying a single room, when the grandparents went to see Thomas Davidson about taking plaintiff. This brings us to the main issue in the case, as to what occurred between the grandparents—Truman Finch and wife—and the Davidsons, when plaintiff was taken by the latter.

Mrs. Hallock in her deposition read in evidence by plaintiff, testified among other things, as follows:

"Q. Did you hear Dr. Davidson or his wife say anything about how they were going to take the child? A. The understanding was that they should take her as their own child and that they would adopt her. . . .

"Q. Was anything said by Dr. Davidson indicating that he simply wanted to take Clara to raise, or was he

to take her as his own child? Why, he was to take her as his own child.

"Q. Were you there when they took her away? A. Yes, sir, I was there. My mother went part of the way with her, because she did not care to go with strangers. The Davidsons lived two miles away. Clara remained with them after that. They changed her name as soon as they took her. We visited back and forth with the Davidsons.

"Q. Do you know whether or not the Davidsons spoke of Clara as their own child and told other people that she was their own child? A. Yes, they always did that."

On cross-examination, this witness testified as follows:

"Q. When you speak of Mr. and Mrs. Davidson adopting Clara, or taking her to live with them, you mean one of them in particular or both of them? A. Both of them.

"Q. Mrs. Hallock, you have always merely supposed and understood only that the Davidsons had adopted Clara. That is, it's been your understanding? A. Yes, sir.

"Q. You stated that Clara had told you that she always supposed that she was adopted until after her marriage? A. Yes; she told me that. She said it to me in a letter.

"Q. How did Clara happen to tell you that? A. She wrote to me to find out what I knew about it, and she said that in that letter.

"Q. That was just after her marriage? A. No. That was this spring, after Mr. Davidson died."

John T. Hallock was asked to state what Dr. Davidson said, in reference to taking plaintiff to raise or adopting her, and he said:

"I don't remember there was anything said about adopting her. I don't think there was."

He further testified on cross-examination:

"Q. Was anything said by those parties as to whether he took Clara as his own child? A. Yes, I don't remember anything about the adoption.

"Q. Your recollection is that they were to take Clara and treat her and provide for her, as their own child? A. Yes. And that she should be called after their own name and be treated as their own child. They would not take her unless they could call her and take her as their own child. That import anyway.

"Q. What did Dr. Davidson say about taking Clara and wanting to give her his name and having it understood that he was to keep her always as his own child and that her kinfolks should not interfere and try to take her away from them? A. That's it, as near as I can state it.

"Q. This all occurred at your house in Phillips County, Kansas, did it not? A. At my house or my dugout."

He further testified on cross-examination:

"I think Clara was about four years old at that time. My father-in-law and mother-in-law, Truman Finch and wife, brought her to my house. They are both dead now."

The above is substantially all the testimony as to what occurred in the State of Kansas at the time of the alleged adoption. When plaintiff was about twelve years old, the Davidsons moved with her to Kansas City, Missouri, and she continued to live with them up to the time of her marriage in 1904. During all the time she lived with them, after they took her in Kansas, she went by the name of Clara Davidson. She was introduced to their friends, acquaintances and those with whom they did business, as *their daughter*. They always spoke of her as their daughter or adopted daughter, and never mentioned her in any other manner. She went to school while at Kansas City, and performed such services around the house as any child would perform in behalf of her parents. They were kind and affectionate to her and she was always a kind and dutiful child toward her adopting parents. In fact, the community where they lived at the time of her marriage universally understood that she was the

natural or adopted child of the Davidsons. The plaintiff understood, up to the time of her marriage, that she was their adopted child.

These facts were so strongly proven by the numerous witnesses that defendant's counsel, during the examination of Dr. Frank S. Arnold, who was pastor of the Presbyterian church, said:

"There is no question but that she had Doctor Davidson's name and he consented to the use of the name and treated her ordinarily as a member of the household."

Thereupon the following occurred:

"Mr. Hill: We offer it (church bulletin) to show that she was generally known as the daughter of Doctor Davidson.

"Mr. Gossett: There is no question but what he treated her familiarly as a member of his household, and she took his name and he may have referred to her as his daughter and may have wanted people to think she was his daughter."

During the progress of the trial, Mr. Gossett said:

"It seems to me we are wasting time. He treated her with affection and called her daughter. There is no question about that."

Without pursuing this inquiry further, it is manifest that on the facts disclosed in the record, the Davidsons agreed, without doubt, to take the plaintiff and raise her as their own child, with the understanding that they should have the privilege of changing her name; that the grandparents were to have no further control over her. Her name was changed by the Davidsons in 1886, when they first received her, and she thereafter went by the name of Clara Davidson. It is likewise true, that neither the grandparents nor any of plaintiff's kin ever attempted to exercise any further control over her.

Upon the foregoing facts, the trial court found the issues for defendants. Plaintiff filed her motion for a new trial, which was overruled and the cause appealed to this court.

I. We are thoroughly satisfied from the evidence that Thomas Davidson and his wife, who lived in Phillips County, Kansas, in 1886, had no children of their own; that they agreed with Truman Finch and wife—grandparents of plaintiff—to take and raise the latter, as *Adoption of Child.* their own child; that the grandparents were to have no further control over plaintiff and she was to assume the name of Clara Davidson. The evidence is undisputed that the Davidsons took plaintiff to their home, changed her name from Wilson to Clara Davidson; that neither the grandparents, nor any of plaintiff's relatives, ever thereafter attempted to exercise any control over her; that she went into the family of the Davidsons when about four years of age, and thereafter was treated by them as their own child, to the date of her marriage in 1904; that she continued thereafter, to the death of both Davidsons, to be considered as their own child or adopted child. She was kind and affectionate toward the Davidsons, and treated them as a dutiful child would her natural parents. The entire community, which knew the Davidsons, understood that plaintiff was their child or adopted child. The Davidsons never spoke of her in any other manner, and frequently stated to their friends and acquaintances that she was their adopted daughter.

The grandparents performed their part of the Kansas agreement by delivering plaintiff to the Davidsons, and exercising no control over her thereafter. The Davidsons performed a part of their agreement, at least, by changing plaintiff's name to that of Davidson, and by introducing her to all their acquaintances as their daughter or adopted daughter, and treating her accordingly. The plaintiff carried out her part of the agreement made in her behalf, by living with the Davidsons as their child until her marriage in 1904, and performing such services as a natural child would have performed under the circumstances. She continued to treat them as her father and mother until their respective deaths. Had the Davidsons and plaintiff been residents of Missouri, when the former took possession of plaintiff as their child, a court of equity, on the facts before us, would undoubtedly have

decreed that she was an adopted child and inherited the property in controversy, subject to the statutory interests of defendant, Augusta Davidson. [Ralph Signaigo v. Mary Signaigo, Adm'x (Mo.); Lindsley v. Patterson, 177 S. W. (Mo.) 826; Martin v. Martin, 250 Mo. l. c. 547 et seq.; McElvain v. McElvain, 171 Mo. l. c. 254; Lynn v. Hockaday, 162 Mo. 111; Buck v. Meyer, 190 S. W. (Mo. App.) l. c. 997.]

The law is so well settled in this State by the foregoing authorities, that we do not deem it necessary to refer to others.

II.   Does the Kansas statute (Sec. 5065, G. S. 1909), providing for adoption by petition and order of the probate court, preclude the maintenance of an equitable proceeding in Missouri, on the facts before us, where no prop-

Preclusion of Kansas Statute.

erty is sought to be reached in Kansas, and where the Kansas statute is not relied upon by plaintiff as the basis for her action? We think this inquiry should be answered in the negative. We are not concerned with proceedings under the Kansas statute cited, but with the question as to whether said statute was intended to *preclude* the maintenance of an equitable proceeding like this, even in *that* State.

In Anderson v. Anderson, 75 Kan. l. c. 129-30, it is said:

"We do not regard Renz v. Drury, 57 Kan. 84, as laying down the hard-and-fast rule that a court of equity should never compel the specific performance of a parol contract of this character, but rather as an illustration of the doctrine, recognized almost universally, that each case depends upon its own particular facts and circumstances, and the granting or denying of the remedy rests in judicial discretion."

The recent case of Malaney v. Cameron, 159 Pac. (Kan.) l. c. 20-21, clearly recognizes the doctrine, that a *written* contract to adopt might be enforced in equity, *in that State,* if the facts warranted it, although the Kansas statute was not followed. In other words, both Kansas and Missouri have specific statutes providing for the adop-

tion of children, *yet in neither State is it provided by law that a court of chancery cannot enforce a contract like the one at bar, where it has been specifically performed, by the child and grandparents.* The plaintiff is not relying upon any Kansas statute, nor is she seeking to *reach* any *property* in *that State.* On the contrary, she seeks to enforce *here* an agreement, in equity, which has already been performed by herself and grandparents; and which has been performed by the adopting parents, except as to the statutory formality required by law in the execution of deeds of adoption. The authorities heretofore cited, as well as those referred to therein, clearly sustain the right to maintain such an action. A distinction is made by many of the authorities between a case where the decedent has made a valid contract to provide in his will a specific sum for a child—where strict proof is required as to the facts—and one where he simply agrees *to adopt the child as his own.* In the latter case, the minor occupies .the same position as a natural-born child, and may, like the latter, be cut off with a *nominal* sum, but in the former case, the heirs of decedent *must* carry out his agreement, notwithstanding the will may contain provisions to the contrary.

In the case before us, there are no natural descendants of Thomas Davidson, *and plaintiff is seeking to have her status established as his adopted child.* We have before us all the parties interested in the estate of Thomas Davidson, deceased, and rule that plaintiff is entitled to recover herein.

III. It is insisted that the first count of plaintiff's petition should be treated as an action at law, and as the case was tried without instructions, the finding of the trial court is conclusive against plaintiff. This contention is not well founded for two reasons: First, because **Equity Suit.** the case was tried in the court below as an equity case throughout, and, second, because a court of equity alone has jurisdiction to enforce this class of agreements. The plaintiff in the first count set out the facts which entitle her to have a court of equity decree

that she is an adopted child. The court must find that the facts exist which entitle her to the equitable relief prayed for, and if this is done it follows that she is entitled to a decree accordingly. After setting out the facts, she asks the court to declare upon a consideration of same, in connection with the evidence, that she *is* the adopted child of decedent, and is entitled to his property, subject to the widow's interest therein. She thus calls for equitable relief and the first count should accordingly be considered as a proceeding in equity.

IV. We have given careful consideration to all the questions raised and discussed by counsel in their respective briefs, and without prolonging this opinion, have reached the conclusion that plaintiff is entitled to a decree on the facts before us, declaring that she is the adopted child of Thomas Davidson, deceased, and as such, is the legal owner of the property in controversy, subject to the statutory interests therein of the defendant, Augusta Davidson, as the widow of decedent.

Conclusion.

The cause is accordingly reversed and remanded with directions to the trial court to set aside its judgment; to enter a decree in favor of plaintiff and to otherwise dispose of the case in conformity to the views herein expressed.

PER CURIAM.—The foregoing opinion of RAILEY, C., is adopted as the opinion of the court. All the judges concur.