WHEELING DOLLAR SAVINGS & TRUST CO., *etc.*,

FREDERICK P. STAMP, JR. GUARDIAN AD LITEM, *etc.*

*v.*

ADA BELLE SINGER, *et al.*

(No. 14090)

WHEELING DOLLAR SAVINGS & TRUST CO., *etc.*,

*v.*

ADA BELLE SINGER

(No. 14091)

Decided October 31, 1978.

Rehearing Denied January 18, 1979.

*Schrader, Stamp & Recht* and *Frederick P. Stamp, Jr.,* for appellant in 14090.

*James R. Ewing, Galbraith, Seibert, Kasserman, Farnsworth, Gillenwater & Glauser* and *James E. Seibert,* for appellees in both cases.

*Douglas McKay* for appellant in 14091 and for appellees in 14090.

NEELY, JUSTICE:*

These appeals present a question of first impression with regard to the doctrine of equitable adoption and arise from a declaratory judgment proceeding in the Circuit Court of Ohio County instituted by Wheeling Dollar Savings & Trust Co., to determine the proper distribution of a trust corpus. Amelia A. Welshans died January 19, 1923 and Item 3 of her will directed the executor to reduce the residue of the estate to cash and distribute it as follows:

> Unto my sister Ada Hardman, I give and bequeath a one-sixth (1/6) part of such balance; unto my brother Benjamin Martin, I give and bequeath a one-twelfth (1/12) part of such balance; unto my brother Edward Martin, I give and bequeath a one-twelfth (1/12) part of such balance; and unto the Citizens-Peoples Trust Co., a corporation, of Wheeling, W. Va., and its succes-

---

*This case was reassigned on 10 September 1978 to this writer.

sors, I give and bequeath a two-thirds (2/3) part of such balance, in trust for the following purposes; to take and handle and invest so as to produce income, issue and profits, and after paying all proper charges, to pay the residue in equal one-half portions one-half to my niece Lyda Wharton for and during her natural life in quarterly installments, and the other one-half portion to Olga Rosalia Welshans, the girl raised by me who was 15 years of age in June, 1922 for and during her natural life; at the death of either said Lyda or the said Olga whichever occurs first, the portion of said income of the one so dying shall be paid to the survivor for and during her natural life; and *at the death of both said Lyda and Olga, the principal of said trust fund shall be distributed by said trustee among my heirs the children of the said Olga and said Lyda then living,* the children of each taking the parents share per stirpes & not per capita; *and if both shall die leaving no child or children then said fund is to be distributed among my heirs at law.* (Emphasis added.)

Amelia A. Welshans' will provided, in the portion quoted above, that two-thirds of her residuary estate be placed in trust with income for life to be paid to Olga Rosalia Welshans and Lyda Wharton and principal be distributed to the living child or children, if any of them per stirpes upon the death of both of them. Olga Rosalia Welshans died on or about the year 1926 without children and Lyda Wharton died March 26, 1974. If Lyda Wharton had surviving children, they would take exclusively, but if she did not, then Amelia A. Welshans' heirs-at-law would be entitled to the trust fund.

After Lyda Martin's death, Ada Belle Singer, apparently believing she was the legally adopted daughter of Lyda Wharton, informed the trustee, Wheeling Dollar Savings & Trust Co., of her status and claimed entitlement to the trust principal. Wheeling Dollar Savings & Trust Company, aware of a potential problem, petitioned the Circuit Court of Ohio County for a declaratory judgment concerning proper distribution. On September 20,

1974, Ada Belle Singer answered the declaratory judgment petition and informed the court:

(4) That this defendant until very recently had every reason to believe that she had been *formally* adopted by Lida [sic] Martin Wharton, but that a diligent search has failed to reveal formal adoption proceeding in Ohio or Marshall County, West Virginia. (Emphasis added)

The circuit court found that Ada Belle Singer, not being the natural or legally adopted child of Lyda Wharton, was not entitled to receive the principal. We find that ruling may be erroneous and remand this case[1] to the Circuit Court of Ohio County for a hearing to determine whether Ada Belle Singer was equitably adopted by Lyda Wharton and, therefore, entitled to the entire trust principal. In the event that the Circuit Court determines that Ada Belle Singer does not qualify as an equitably adopted child and, therefore, is not entitled to the trust principal, we then affirm that court's finding that March 26, 1974 was the proper date of vesting to determine Amelia A. Welshans' heirs-at-law.

I

Two threshold procedural questions are presented before we may address this case on the merits. The first concerns whether Ada Belle Singer is barred from appealing the equitable adoption question by *W.Va. Code,* 58-5-4 [1973] which states:

No petition shall be presented for an appeal from, or writ of error or supersedeas to, any judgment, decree or order, whether the State be a party thereto or not, which shall have been rendered or made more than eight months before such petition is presented.

The other appellants urge that the circuit judge's order dated November 7, 1974 was a final appealable interlocu-

---

[1] While two appeals were filed, they both arise from a single case; one appeal is by Ada Belle Singer presenting the question of equitable adoption and the second appeal is by those who would benefit from early vesting of the estate.

tory order against appellant Ada Belle Singer's claim to the trust corpus as a "child" under the testamentary trust. However, Rule 54(b) W. Va. RCP makes an interlocutory order on multiple claims final "only upon an express determination that there is no just reason for delay and upon an express direction for entry of judgment." There was no express finding as contemplated by Rule 54(b) in the November 7, 1974 order. While that order expressed the lower court's finding that Ada Belle Singer was not a "child," the final order of the circuit court as contemplated by Rule 72, W. Va. RCP and *Code*, 58-5-4 [1973], was not made until the court's order of September 27, 1977 which set forth the proper distribution of the trust principal. Until that final order, it was possible, though admittedly not likely, that Ada Belle Singer could prevail; therefore, her appeal, filed November 22, 1977, was timely.

The second procedural question concerns whether Ada Belle Singer's appeal based on equitable adoption is barred under our holding in Syl. pt. 1 of *Adams v. Bowens*, ____ W. Va. ____, 230 S.E.2d 481 (1976) that "this Court will not consider nonjurisdictional questions which were not considered and decided by the court from which the appeal has been taken."

While appellant Singer did not specifically mention "equitable adoption" in the court below, she did maintain in her answer:

> (5) That in any case this defendant grounds her claim not merely upon her *formal* status as a child of Lida [sic] Martin Wharton, but rather upon the intent of the Trustor, Amelia A. Welshans, when the latter provided for the distribution of the trust in question to the children of Lida [sic] Martin Wharton. (Emphasis added)

Procedural rules are designed to facilitate adjudication on the merits; their purpose is not to defeat meritorious claims by requiring mechanical adherence to rules which unique circumstances make inadvertently oppressive, *Rosier v. Garron, Inc.*, 156 W. Va. 861, 199 S.E.2d 50

(1973). Furthermore appellant Singer's answer fairly gave notice that her claim was not limited to that of a "formally" adopted child. A liberal interpretation of her pleading becomes decidedly equitable when we recognize that at the time of the original proceedings this Court had not yet decided *Wheeling Dollar Sav. & Trust Co. v. Hanes,* ___ W. Va. ___, 237 S.E.2d 499 (1977), a case which permitted adopted children to be treated as natural children in the administration of trusts created before 1959 and expressly overruled syl. pt. 2 of *Security National Bank and Trust Co. v. Willim,* 151 W. Va. 429, 153 S.E.2d 114 (1967).

## II

Having determined that Ada Belle Singer's appeal is properly before this Court, we do not hesitate to hold that the concept of equitable adoption should be a viable theory for relief from injustice in West Virginia, as long as adequate care is taken to protect the tradition of our ancient law of future interests and inheritance. The status of adopted children long plagued this and other courts, but our holding in *Hanes, supra* settled the controversy in West Virginia. In *Hanes* we set the law by saying:

> It appears to the Court that most testators and trustors establish trusts for the benefit of those persons they love and for the benefit of those persons yet unknown and yet unborn whom such testators and trustors infer that their loved ones will eventually love. While there may be testators and trustors who are so concerned with medieval concepts of "bloodline" and "heirs of the body" that they would truly be upset at the thought that their hard-won assets would one day pass into the hands of persons not of their blood, we cannot formulate general rules of law for the benefit of eccentrics. *Id* at 503.

Since *Hanes* clearly established the right of adopted children to be treated as natural children, the only remaining question presented in the case before us is whether adherence to formal adoption procedures, *W.Va*

*Code*, 48-4-1 [1969] *et seq.* is the exclusive method by which a person may be accorded the protections of adoptive status in West Virginia. We find that it is not.

While formal adoption is the only safe route, in many instances a child will be raised by persons not his parents from an age of tender years, treated as a natural child, and represented to others as a natural or adopted child. In many instances, the child will believe himself to be the natural or formally "adopted" child of the "adoptive" parents only to be treated as an outcast upon their death. We cannot ascertain any reasonable distinction between a child treated in all regards as an adopted child but who has been led to rely to his detriment upon the existence of formal legal paperwork imagined but never accomplished, and a formally adopted child. Our family centered society presumes that bonds of love and loyalty will prevail in the distribution of family wealth along family lines, and only by affirmative action, *i.e.*, writing a will, may this presumption be overcome. An equitably adopted child in practical terms is as much a family member as a formally adopted child and should not be the subject of discrimination. He will be as loyal to his adoptive parents, take as faithful care of them in their old age, and provide them with as much financial and emotional support in their vicissitudes, as any natural or formally adopted child.

However, the equitably adopted child and the formally adopted child are not without differences. The formally adopted child need only produce his adoption papers to guarantee his treatment as an adopted child. The equitably adopted child in any private property dispute such as the case under consideration involving the laws of *inheritance* or *private trusts*[2] must prove by clear, co-

---

[2] The demanding burden of proof to be carried by one seeking to prove an equitable adoption in a private property dispute involving inheritance or private trusts is not meant to disturb pre-existing law concerning State law conferred government benefits. Statutes conferring State government benefits are remedial and the claimant seeking to establish an equitable adoption to obtain those benefits has the benefit of a liberality rule which does not apply to a

gent and convincing evidence that he has stood from an age of tender years in a position *exactly* equivalent to a formally adopted child. Circumstances which tend to show the existence of an equitable adoption include: the benefits of love and affection accruing to the adopting party, *Foster v. Cheek*, 212 Ga. 821, 96 S.E.2d 545 (1957); the performances of services by the child, *Lynn v. Hockaday*, 162 Mo. 111, 61 S.W. 885 (1901); the surrender of ties by the natural parent, *Chehak v. Battles*, 133 Iowa 107, 110 N.W. 330 (1907); the society, companionship and filial obedience of the child, *Oles v. Wilson*, 57 Colo. 246, 141 P. 489 (1914); an invalid or ineffectual adoption proceeding, *Benefield v. Faulkner*, 248 Ala. 615, 29 So.2d 1 (1947); reliance by the adopted person upon the existence of his adoptive status, *Adler v. Moran*, 549 S.W.2d 760 (Tex. Civ. App. 1977); the representation to all the world that the child is a natural or adopted child, *In Re Lamfrom's Estate*, 90 Ariz. 363, 368 P.2d 318 (1962); and the rearing of the child from an age of tender years by the adopting parents. *Lamfron's Estate, supra.* Of course, evidence can be presented which tends to negate an equitable adoption such as failure of the child to perform the duties of an adopted child, *Fisher v. Davidson*, 271 Mo. 195, 195 S.W. 1024 (1917), or misconduct of the child or abandonment of the adoptive parents, *Winne v. Winne*, 166 N.Y. 263, 59 N.E. 832 (1901); however, mere mischievous behavior usually associated with being a child is not sufficient to disprove an equitable adoption. *Tuttle v. Winchell*, 104 Neb. 750, 178 N.W. 755 (1920). Most of the cited cases predicate the finding of an equitable adoption on the proof of an expressed or implied contract of adoption. While the existence of an ex-

---

contest among private litigants. As the Federal District Court noted in *Davis v. Celebreeze*, 239 F. Supp. 608 (S.D. W. Va. 1965), equitable adoption is "compatible with [the] duty to administer social legislation in the broad framework of its humanitarian aim— to ameliorate economic hardship to the wage earner and those dependent upon him . . ." This case correctly states what this Court would hold under State law if we were deciding a similar issue under a State remedial or humanitarian statute. *See also Smith v. Richardson*, 347 F. Supp. 265 (S.D.W.Va. 1968).

press contract of adoption is very convincing evidence, an implied contract of adoption is an unnecessary fiction created by courts as a protection from fraudulent claims. We find that if a claimant can, by clear, cogent and convincing evidence, prove sufficient facts to convince the trier of fact that his status is identical to that of a formally adopted child, except only for the absence of a formal order of adoption, a finding of an equitable adoption is proper without proof of an adoption contract.

In the case before us, appellant Singer alleges that she was taken from an orphanage when she was eight or nine by the Whartons; that she was given the surname of the Whartons; that she was raised as their child and that, until this action, she believed herself to be the adopted child of the Whartons. Furthermore it appears that Lyda Wharton devised and bequeathed her residuary estate to "my daughter, Ada Belle Singer." If the appellant Singer can prove these allegations at the hearing below, she has a strong case for equitable adoption, and one of the most important elements in her proof is that she was held out to all the world as a natural or adopted child. Clear, cogent and convincing proof of treatment as a "child" consistent with formal adoption is the highest possible standard of civil proof defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases." *Cross v. Ledford*, 161 Ohio St. 469 at 477, 120 N.E.2d 118 at 123 (1954). *See also Fred C. Walker Agency Inc. v. Lucas*, 215 Va. 535, 211 S.E.2d 88 (1975).

## III

In the event that Ada Belle Singer is unable to prove an equitable adoption, the trust principal will be distributed to Amelia A. Welshans' heirs-at-law. The trial court found that the estate vested on March 26, 1974, the date

of death of the last income beneficiary, and that the heirs-at-law were to be determined as of that date.

Appellants, Ada Belle Singer (residuary legatee under Lyda Wharton's will) and Frederick P. Stamp, Jr. (Guardian *ad litem* for unknown heirs-at-law) contend that the proper date of vesting is January 19, 1923 and the heirs-at-law should be determined as of that date. We find their contention to be without merit.

The will of Amelia A. Welshans provided that:

> [A]t the death of both the said Lyda and Olga, the principal of said trust fund shall be distributed by said trustee among ... the children of the said Olga and said Lyda *then living* ... and if both shall die leaving no child or children *then* said fund is to be distributed among my heirs at law. (Emphasis added)

As the circuit court concluded, the term "then living" clearly looks to the future. When the testatrix used "then" again in the same sentence, that also clearly looks to the future. The use of the word "then" with other unambiguous language clearly reveals an intention by the testatrix to delay vesting of the estate. *Security National Bank and Trust Co. v. Willim*, 152 W. Va. 27, 158 S.E.2d 715 (1968). We are mindful that the law favors early vesting of remainders but only at the earliest moment consistent with the terms of the instrument. "The rule in favor of early vesting should not be applied in the interpretation of a will so as to contravene the expressed intention of the testator." Syllabus pt. 3, *Tharp v. Tharp*, 131 W. Va. 529, 48 S.E.2d 793 (1948).

We agree with the trial court that Amelia A. Welshans' use of "then living" and "then" indicate an intention to look to the future. Therefore, if the circuit court determines that Ada Belle Singer is not entitled to the entire trust principal as the equitably adopted child of Lyda Wharton, we affirm that court's ruling that the estate vested on March 26, 1974 and Amelia A. Welshans' heirs-at-law are to be determined as of then.

For the reasons set forth above, the judgment of the Circuit Court of Ohio County is affirmed in part and reversed in part and the case remanded for further proceedings consistent with this opinion.

*Affirmed in part,*
*Reversed in part,*
*and Remanded.*

CAPLAN, CHIEF JUSTICE, *concurring in part and dissenting in part:*

While I concur in that portion of the majority opinion designated as III, relating to the time the estate vested, I vigorously dissent to that portion which permits, on appeal, the consideration of a matter which was not considered and decided by the trial court. I refer to the principle or theory of "equitable adoption," raised in this Court by the appellant, Ada Belle Singer. I do not agree that this matter was fairly considered and decided by the trial court.

In *Mowery v. Hitt,* 155 W. Va. 103, 181 S.E.2d 334 (1971), the Court said: "In the exercise of its appellate jurisdiction, this Court will not decide nonjurisdictional questions which have not been decided by the court from which the case has been appealed." This principle was reaffirmed in *Adams v. Bowens,* ___ W. Va. ___, 230 S.E.2d 481 (1976). See *Wilkinson v. Searls,* 155 W. Va. 475, 184 S.E.2d 735 (1971); *Western Auto Supply v. Dillard,* 153 W. Va. 678; 172 S.E.2d 388 (1970); *In Re: Tax Assessment of Real Estate of Morgan Hotel Corporation,* 151 W. Va. 357, 151 S.E.2d 676 (1966); and *Work v. Rogerson,* 149 W. Va. 493, 142 S.E.2d 188 (1965).

In *Cook v. Collins,* 131 W. Va. 475, 48 S.E.2d 161 (1948), the following language is found, reflecting one reason in support of the above holding: "This Court, having no original jurisdiction of this cause and acting only as an appellate court, will not consider nonjurisdictional questions not acted upon by the trial court ... To consider and decide nonjurisdictional questions in this Court, not

acted upon by the trial court, would be the assumption of jurisdiction by this Court which it does not possess."

Although the sense of equity expressed by the majority may sound admirable and may create an aura of sympathy for the appellant, Ada Belle Singer, the remanding of this case for the taking of evidence relating to the equitable adoption theory ignores a long established and well reasoned rule, that is, not to consider or decide nonjurisdictional questions not acted upon by the trial court. Perhaps the old saw—hard cases make bad law— could not be more applicable.

The holding of the majority, by considering a matter not decided by the court below, serves only to throw open the gates of appellate review to the extent that we may never be able to close them. New matters, principles and theories will be permitted to be raised here for the first time and then be bounced back to the trial court for decision. When it returns for review, will yet another new assignment appear? Where is the end to fair and effective appellate review?

I would affirm the order of the Circuit Court of Ohio County.