437 S.E.2d 585

Mabel KISAMORE, Lois Carr and Roy Carr, Elvin Kisamore and Joanne Kisamore, Christina Hunt and Bobby Hunt, and Violet Long and Guy Long, Plaintiffs Below, Appellees,

v.

Viva Jean COAKLEY and Joe Coakley, Vada Lawrence and Algie Lawrence, Judy Nelson, Juanita Hedrick, Guy Kisamore and Helen Kisamore, and Virginia Grace Mitchell, Defendants Below, Appellees,

v.

BRAGUNIER FARMS, INC., A MARYLAND CORPORATION, Third–Party Defendant Below, Appellee,

Susan Kisamore, Appellant.

No. 21548.

Supreme Court of Appeals of West Virginia.

Submitted May 11, 1993.

Decided July 19, 1993.

Lary D. Garrett, Garrett & Garrett, Moorefield, for appellant, Susan Kisamore.

Jeffrey R. Bowers, Franklin, for appellee, Virginia Grace Mitchell.

James Paul Geary, Parkersburg, for defendants below, appellees.

John G. Ours, Petersburg, for plaintiffs below, appellees.

PER CURIAM:

This case is before this Court upon an appeal from the August 4, 1992, order of the Circuit Court of Pendleton County, West Virginia. The circuit court held that the appellant, Susan Kisamore, failed to meet the criteria of being equitably adopted, and thus, the executor of the estate of Elmer Kisamore was correct in excluding the appellant as an heir to the estate. On appeal, the appellant asks that this Court reverse the ruling of the circuit court and find that Vivan Kisamore equitably adopted Susan Kisamore. This Court has before it the petition for appeal, all matters of record and the briefs of counsel. For the reasons stated below, the judgment of the circuit court is affirmed.

I

On December 15, 1971, Vivan Kisamore and his wife, Joy Kisamore, were given physical custody of the appellant, then two years old, by the West Virginia Department of Welfare (now known as the West Virginia Department of Health and Human Resources) pursuant to an Adoptive Parents Agreement. This agreement indicated that the Kisamores intended to adopt the appellant. This agreement provided that the appellant would have to live in the Kisamore's home for a minimum period of six months before the Kisamores could petition the court to confirm the adoption. Furthermore, the agreement gave the Kisamores the right to have the West Virginia Department of Welfare remove the appellant from their home any time prior to the completion of the adoption.

While at the Kisamore's home, the appellant celebrated her third birthday on January 19, 1972. The appellant also presented evidence before the trial court suggesting that Vivan and Joy Kisamore and the appellant were developing strong family ties. For example, the appellant referred to Vivan Kisamore as "Daddy."

Unfortunately, on February 11, 1972, Vivan Kisamore, who was a truck driver, was killed in a trucking accident. As a result, Joy Kisamore received Social Security benefits on behalf of the appellant as a dependent of Vivan Kisamore. However, the appellant was not an heir to Vivan Kisamore's estate, as Joy Kisamore was listed as the only heir to his estate.

On October 16, 1972, Joy Kisamore adopted the appellant. Subsequently, Joy Kisamore remarried. The appellant then resided with her adoptive mother and her husband.

Vivan Kisamore was the son of Elmer and Mabel Kisamore. On August 13, 1991, Elmer Kisamore died intestate. Elmer Kisamore was survived by his wife, Mabel Kisamore, nine living children and one biological grandchild whose parents predeceased her. Elmer Kisamore's estate was appraised at $95,700 for personal property and $693,616 for real estate, for a total of $789,316. Part of the real estate was sold by the widow and children to Bragunier Farms, Inc., one of the appellees. After her husband's death, Mabel Kisamore gave the appellant $5,000.00, because, according to the appellant, she thought it was unfair that the appellant was excluded as an heir to Elmer Kisamore's estate.

On April 27, 1992, Mabel Kisamore and some of the heirs of Elmer Kisamore's estate filed a complaint requesting the trial court to partition by sale certain tracts of real estate owned by Elmer Kisamore at his death. The remaining heirs, and also appellees herein, filed answers agreeing that the real estate was not susceptible to division and requested that the land be sold.

On June 11, 1992, the appellant filed a motion to intervene claiming she was an heir to Elmer Kisamore's estate because she had been equitably adopted by Vivan Kisamore. A hearing was held and on August 4, 1992, the trial court denied the appellant's motion to intervene. The trial court found that the appellant did not meet the standard necessary for an equitable adoption. Because the relationship between Vivan Kisamore and the appellant only existed for fifty-seven days, the trial court held that this period of time was too brief to consummate an adoption.

It is from the order of August 4, 1992, that the appellant appeals to this Court.

## II

■ The appellant's contention is that the trial court erred by failing to find that the appellant was equitably adopted by Vivan Kisamore. Thus, the question before us is whether the facts of this case provide the essential ingredients necessary for the application of the doctrine of equitable adoption. We think not.

■ This Court recognized the doctrine of equitable adoption in the case of *Wheeling Dollar Sav. & Trust Co. v. Singer*, 162 W.Va. 502, 250 S.E.2d 369 (1978). Specifically, we held in syllabus point 2:

The doctrine of equitable adoption is hereby incorporated into the law of West Virginia, but a litigant seeking to avail himself of the doctrine in a dispute among private parties concerning trusts or the descent of property at death must prove by clear, cogent, and convincing evidence that he has stood from an age of tender years in a position exactly equivalent to that of a formally adopted or natural child; provided, however, that the same strict standard of proof does not apply to the determination of dependency under any State remedial statute conferring State government benefits which must be liberally construed to effect its purpose.

The requisite time frame to consummate a formal adoption is set forth in *W.Va.Code,* 48–4–6(b) [1985]:

The petition for adoption may be filed at any time after the child who is the subject of the adoption is born and the adoptive placement determined, ..., but the hearing on said petition shall not be held until after the child shall have lived in the house of the adopting parent or parents for a period of six months.

However, as discussed below, satisfying this time frame is not the exclusive method of obtaining adoptive status.

In *Wheeling Dollar,* this Court set forth several indicia of an equitable adoption:

the benefits of love and affection accruing to the adopting party; the performances of services by the child; the surrender of ties by the natural parent; the society, companionship and filial obedience of the child;

an invalid or ineffectual adoption proceeding; reliance by the adopted person upon the existence of his adoptive status; the representation to all the world that the child is a natural or adopted child; and the rearing of the child from an age of tender years by the adopting parents.

162 W.Va. at 509, 250 S.E.2d at 373–74 (citations omitted).

Furthermore, in *First Nat'l Bank in Fairmont v. Phillips,* 176 W.Va. 395, 397, 344 S.E.2d 201, 203 (1985), we emphasized the fact that "the status or position of the equitably adopted child [is] not artificially limited to that of being a 'child' but [is] recognized to be that of a 'family member,' just as a natural child or formally adopted child[.]"

In order to protect against fraudulent claims, in *Wheeling Dollar,* this Court imposed a demanding burden of proof:

We find that if a claimant can, by clear, cogent and convincing evidence, prove sufficient facts to convince the trier of fact that his status is identical to that of a formally adopted child, except only for the absence of a formal order of adoption, a finding of an equitable adoption is proper without proof of an adoption contract.

162 W.Va. at 510, 250 S.E.2d at 374.

Thus, if the litigant can establish the existence of equitable adoption through the circumstances mentioned above by clear and convincing evidence, then she can inherit from the lineal kindred of her adopting parent. *See First Nat'l Bank, supra.*

In the instant case, the Kisamores had a written agreement of their intent to adopt the appellant with the West Virginia Department of Welfare. The agreement gave the Kisamores the right to have the appellant removed from their home at any time during this six-month waiting period. The agreement further provided that the West Virginia Department of Welfare was to be notified by the Kisamores of any changes that may occur within the family. In addition, if the child required surgery, the agreement stated that the Kisamores, prior to surgery, must obtain consent of the West Virginia Department of Welfare, as the child's guardian. Obviously, the appellant had not been formally or legal-

ly adopted during the time this agreement was in effect; and thus, looking at this agreement and considering the rules to be obeyed by the Kisamores, it is difficult to say that the appellant was in a "position exactly equivalent to that of a formally adopted or natural child[.]" Syl. pt. 2, in part, *Wheeling Dollar, supra.*

Regardless of the agreement, we do not believe the appellant has established, through the above-mentioned indicia, and by clear, cogent and convincing evidence, the fact that Vivan Kisamore equitably adopted the appellant. It is unfortunate that Vivan Kisamore and the appellant only had fifty-seven days together before Vivan Kisamore died. Due to the fact that Vivan Kisamore was a truck driver, it is unclear as to how much time Vivan Kisamore and the appellant really had together to form the bonds of father and daughter.

Yet, even if we assume that Vivan Kisamore and the appellant spent those fifty-seven days together, one could not conclude that Vivan Kisamore satisfied the requirements of establishing equitable adoption in the *rearing* or upbringing of the child from tender years or that the appellant was able to perform services for Vivan Kisamore. Furthermore, the sparse evidence we do have before us suggests, first, it would be difficult to assume that the appellant relied, at the time, upon the existence of the adoptive status, and second, that there was a representation to all the world that the child was a natural or adoptive child. We should note again the fact that upon Vivan Kisamore's death, the appellant did not inherit anything from his estate, as Joy Kisamore was listed as the only heir.

The heightened standard of proof and the strong language found in *First Nat'l Bank* and *Wheeling Dollar* cast a demanding burden on the appellant to prove she was equitably adopted. However, the facts in this case fall far short of the standard followed in the above cases.

In the case of *Spiegel v. Flemming,* 181 F.Supp. 185 (N.D.Ohio 1960), the court therein was faced with very similar facts as we are

faced with in the instant case. The court in *Spiegel* refused to grant child's benefits to a child who had been placed in the home of the Spiegels, a husband and his wife, by a welfare agency. The parties thereto signed an agreement which provided for a six-month waiting period before commencement of the adoption proceeding. Unfortunately, the husband died within the six-month waiting period.

In arriving at its decision, the court relied upon the fact there was not a complete surrender by the welfare agency to the husband and wife; for example, the welfare agency had the right to reclaim custody of the child and the husband and wife had the right to return the child to the welfare agency. Specifically, the court in *Spiegel* held:

> There can be no doubt that in the case at bar, the Spiegels intended to treat the child as their own and to adopt him. The evidence discloses, however, that at the time of the [husband's] death [the wife] and her husband were not bound to adopt the child. Nor was the placement agency bound to relinquish the child to the Spiegels.

181 F.Supp. at 188–89.

The concept of equitable adoption focuses on the fact that the child was in every way equivalent to that of an adopted child, absent a formal court order. The appellant alleges that she was equitably adopted by Vivan Kisamore before his death, and as a result, she is entitled to inherit from Elmer Kisamore. Yet, the appellant has failed to satisfy the six-month waiting period as required by the *West Virginia Code* in order to perfect a statutory adoption, and more importantly, she has failed to satisfy the indicia set forth in *Wheeling Dollar* in order to perfect an equitable adoption. What the appellant is asking of this Court is that we go beyond all our legal principles and guidelines to find that she was equitably adopted. In light of this heightened standard of proof and the facts herein, we are of the opinion that the doctrine of equitable adoption is inapplicable in this case.[1] While we note that the passage

---

1. Since we decided that the appellant was unable to prove by clear, cogent and convincing evi-

dence that she was equitably adopted by Vivan

of the six-month waiting period can serve as a strong indicator that an equitable adoption has occurred, it is not an absolute. In *Wheeling Dollar*, this Court stressed that:

Clear, cogent and convincing proof of treatment as a 'child' consistent with formal adoption is the highest possible standard of civil proof defined as 'that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established.[']

162 W.Va. at 510, 250 S.E.2d at 374, *quoting Cross v. Ledford*, 53 O.O. 361, 161 Ohio St. 469, 120 N.E.2d 118, 123 (1954). Thus, the appellant must prove by clear, cogent and convincing evidence that her status is identical to that of a formally adopted child except for the absence of a formal order of adoption. The record in this case is not sufficient to satisfy the appellant's burden of proof.

Therefore, based upon the foregoing principles, the judgment of the Circuit Court of Pendleton County is affirmed.

Affirmed.

Kisamore, we do not need to reach a decision as to whether she can inherit from Elmer Kisamore.