**STEVEN SIUFANUA, for and on behalf of the CHILDREN of LEE LIAE SIUFANUA and DUWAYNE SIUFANUA, Plaintiffs,**

**v.**

**ESTATE OF LIAE LILI'I SIUFANUA, MATE M. SIUFANUA JACKSON, TALIVE SIUFANUA, MATAATA LILII SIUFANUA, ESTELLA LILII SIUFANUA REID, MELITA SIUFANUA LEUDER, TAFAOMANIFO LILII SIUFANUA, ARVAY M. SIUFANUA, PULEONO LANA SIUFANUA BURGESS, and WENDALL FUIFATU SIUFANUA, Defendants.**

---

**Estate of LIAE LILI'I SIUFANUA, Deceased.**

High Court of American Samoa
Land and Titles Division

LT No. 15-99
PR No. 08-96

April 23, 2001

Before RICHMOND, Associate Justice, and SAGAPOLUTELE, Associate Judge.

Counsel: For Administrator and Defendants, David E. Vargas
For Plaintiffs, Steven Siufanua, *Pro Se*

OPINION AND ORDER

Liae Lili`i Si`ufanua ("Liae") died on December 12, 1992. At the time of his death, Liae was domiciled in Hawaii, but his estate included property in American Samoa, individually-owned land ("the land") registered with the Territorial Registrar under the name "Liae Lili`i & children." The land, named "Ala`iasu," contains approximately 18.623 acres, and is located in the Village of Faleniu. The proceeding to probate Liae's will, PR No. 8-96, was commenced on March 6, 1996. On April 25, 1996, Arvay N. Siufanua ("Arvay"), one of Liae's daughters, was duly appointed administrator of the estate with the will annexed.

On June 1, 1998, Arvay filed her final accounting and proposed

distribution of the estate. Steven Siufanua ("Steven"), the plaintiff in LT No. 15-99, notified Arvay that heirs of two of Liae's grandchildren, Lee Liae Siufanua ("Lee") and Duwayne Siufanua Lili`i ("Duwayne"), both then deceased, claimed interests in the land as registered. As a result, on October 19, 1998, the Court approved Arvay's final accounting and ordered distribution of Liae's interest in the land to the beneficiaries according to Liae's will, subject to a judicial declaration, upon application by the deceased grandchildren's heirs to the Land and Titles Division, of the deceased grandchildren's interests in the land.

On July 7, 1999, in the absence of the anticipated declaratory relief action, Arvay moved to dismiss Steven's objections to her distribution. However, Steven responded by filing LT No. 15-99 for declaratory relief on July 30, 1999. Trial was held on May 15, 2000. Steven and Arvay, with her counsel, were present.

### Discussion

Liae's will was duly executed in Hawaii, on January 24, 1990. The will names Liae's immediate family as his heirs. In addition to his spouse Liva Pilimai Siufanua ("Liva"), there are nine children: Mate M. Siufanua Jackson ("Mate"), Talive Siufanua ("Talive"), Mataata Lilii Siufanua ("Mataata"), Estella Lilii Siufanua Reid ("Estella"), Melita Siufanua Lueder ("Melita"), Tafaomanifo Lilii Siufanua ("Tafaomanifo"), Arvay, Puleono Lana Siufanua Burgess ("Puleono"), and Wendall Fuifata Siufanua ("Wendall"); two grandchildren: Lee and Duwayne; and two deceased children; Liae Siufanua and Muaaufaalele Siufanua, who died in infancy. Liae's "personal representative," in the preference listed, was to be Mate, Talive, or Mataata. Since all three resided outside of American Samoa, Arvay, a resident of the Territory, was selected to be the administrator for the probate proceedings here.

The residuary clause of the will governs the disposition of Liae's interest in the land. It provides that the residue of the estate, real and personal, is devised in equal shares to Mate, Talive, Mataata, Estella, Melita, Tafaomanifo, Arvay, Puleono, Wendall, Lee and Duwayne. Thus, Liae's interest in the land devolves in equal 1/11th shares to these eleven beneficiaries.

The registration certificate shows that the land is owned by "[Liae] & children." Without a joint tenancy provision, Liae and his children held the title to the land as tenants in common. If the children are the nine living children named in the will, then Liae and each child held an undivided 1/10th interest in the land, and Liae's undivided 1/10th interest would devolve to the named beneficiaries in the will in eleven equal shares. The heirs of Lee and Duwayne would first acquire any title to the

land only by this devise. On the other hand, if Lee and Duwayne are included as Liae's children, as Steven contends, then Liae and each child held an undivided 1/12th interest in the land, and Liae's undivided 1/12th interest would still devolve to the beneficiaries in eleven equal shares. The devise would add to the existing title of the heirs of Lee and Duwayne.

■ Resolution of the issue depends upon the application of the doctrine of equitable adoption to the factual situation in this case. This court applied the doctrine for inheritance purposes in the *Estate of Fuimaono*, 23 A.S.R.2d 33 (Trial Div. 1992). The cardinal purpose of the doctrine is to justify the expectations of individuals when their personal relationships fail the test of traditional legal concepts, and to thereby avoid serious hardship. HOMER E. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 25.9, at 926 (2d ed. 1988). The purpose is especially served "when the person whose interests are at stake was a child when the operative facts occurred." *Id.*

■ Courts apply the doctrine only when *de facto* relationships are present. *Id.* at 927. An equitable adoption can be found when a child "has stood from an age of tender years in a position exactly equivalent to a formally adopted child." *Wheeling Dollar Sav. & Trust Co. v. Singer*, 250 S.E.2d 369, 373-74 (W. Va. 1979). Most courts require proof of the *de facto* relationship by clear and convincing evidence. CLARK, *supra*, at 927.

Lee and Duwayne were the biological children of Thurman W. Jackson and Mate, a daughter of Liae and Liva. Thus, they were the biological grandchildren of Liae and Liva. Liae's will recognizes the natural relationships. Clearly, however, Lee and Duwayne were raised from infancy by Liae and Liva as if Lee and Duwayne were their own children. The extended family as a whole appears to have accepted the *de facto* parent-child relationship between Liae and Liva as parents and Lee and Duwayne as their children. Certainly Mate, their mother, and three of the biological siblings of Lee and Duwayne have expressly acknowledged the parent-child relationships of Lee and Duwayne with Liae and Liva. Public and church records relating to the births, marriages, and deaths of Lee and Duwayne also state that Liae and Liva are their parents.

Telling evidence in the context of this family situation is the "Acknowledgement of ownership and subdivision of Land Alaiasu" recorded with the Territorial Registrar on November 15, 1993. This document recognizes the eleven beneficiaries under the will as Liae's children and as common owners of the land. It was signed by all eleven beneficiaries Mate, Talive, Mataata, Estella, Melita, Tafaomanifo, Arvay, Puleono, Wendall, Lee, and Duwayne.

224

Lee and Duwayne might be considered Liae's children adopted in accordance with Samoan custom, with all attendant rights. *See Leasiolagi v. Fao*, 2 A.S.R. 451, 452-53 (Trial Div. 1949). In any event, we are persuaded that this is an appropriate situation to apply the equitable adoption principle. Liae and Liva raised Lee and Duwayne as their children. It would be unnecessarily harsh to deprive the heirs of Lee and Duwayne of ownership rights in the land based upon the acknowledged *de facto* parent-child relationships of Lee and Duwayne with Liae and Liva and the expectations of Lee and Duwayne to be among the common owners of the land.

It is so ordered.